COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ECHOSTAR SATELLITE L.L.C. AND DISH NETWORK, L.L.C., | § | No. 08-10-00328-CV |
| | § | |
| Appellants, | | Appeal from the |
| | § | |
| v. | | County Court At Law No. 6 |
| | § | |
| | | of El Paso County, Texas |
| RAY AGUILAR, | § | |
| | | (Cause No. 2007-017) |
| Appellee. | § | |

**O P I N I O N**

Appellants Echostar Satellite L.L.C. and Dish Network Service, L.L.C. ("Appellants"), appeal a jury verdict and judgment rendered in favor of Ray Aguilar ("Aguilar"). Appellants bring five issues: (1) legal and factual insufficiency of Aguilar's evidence that Appellants' uniform application of their absence control policy was a violation of Chapter 451 of the Texas Labor Code; (2) insufficient evidence to support Aguilar's claim of retaliation under Chapter 451 of the Texas Labor Code; (3) error by the trial court in giving a constructive discharge instruction in a termination case; (4) error by the trial court in admitting improper and prejudicial character evidence; and (5) insufficient evidence to support the jury's award of punitive damages. For the reasons that follow, we affirm in part and reverse and render in part.

**PROCEDURAL BACKGROUND**

Aguilar brought suit for wrongful termination in violation of the Anti-Retaliation Law, Texas Labor Code Chapter 451 (TEX.LAB.CODE ANN. § 451.001 *et seq.*), initially alleging claims for workers compensation retaliation and intentional infliction of emotional distress. He

later filed a Third Amended petition claiming only a violation of Section 451.001 of the Texas Labor Code. Appellants filed a motion for summary judgment, which the trial court denied based on its finding that a jury could determine that Appellants' absence control policy was not uniformly applied to Aguilar.

The trial was held on June 21 through June 25, 2010, and the jury rendered a unanimous verdict in Aguilar's favor, finding that Appellants terminated him in violation of Section 451.001. The jury determined that Aguilar suffered actual damages of $120,000.00, pre-judgment interest of $16,187.67, and assessed exemplary damages of $750,000.00. The trial court reduced the exemplary damages to $200,000.00[1] and entered judgment on the verdict. Appellants filed a motion for judgment notwithstanding the verdict and a motion for new trial, both of which were denied by the trial court. Appellants timely appealed.

### FACTUAL BACKGROUND

Aguilar began working for Appellants in February of 2000 as a customer service representative at the company's call center in El Paso, Texas. In May of 2004, he was granted a transfer to the installation depot, where he worked as a satellite installer. Aguilar's supervisor was Ruben Fragoso ("Fragoso"), who reported to Tommy Rivers ("Rivers"), the manager of the installation department. In November of 2004, Aguilar signed an acknowledgment of his receipt of Appellants' absence policy, which provided that any employee who failed to call in or show up for work on their scheduled day for three days in a row would be terminated for "job abandonment." Aguilar testified that he understood it was Appellants' policy to reprimand and terminate employees under the absence-control policy if employees did not show up for work or

---

[1] This occurred at an entry of judgment hearing held on August 4, 2010, where counsel for both Aguilar and Appellants agreed that the change was required for the judgment to accord with applicable statutes.

2

call in. At trial, Jeannette Alonzo, Appellants' senior human resources manager, testified that employees who failed to report to work for three days in a row are terminated for job abandonment. Linda Lucero ("Lucero"), a human resources department representative for the El Paso installation center, testified that Appellants' "No Call/No Show" policy was applied to all employees across the board, regardless of whether or not the employee had filed a workers' compensation claim.

Appellants conducted safety meetings at the installation depot, which took place, depending on workload, twice a week. Meetings were often held in the mornings, before installers began working. At these meetings, Aguilar stated his concern about safety practices and conditions, but received negative reactions from management when he did so. Fragoso testified that Aguilar complained about the extent of overtime required. Fragoso also testified that Aguilar was a "very good installer" and was "the best or one of the best." Rivers also testified that Aguilar was a good worker.

During June of 2005, Rivers "challenged" his installation team, including Aguilar, to take a FSS II[2] test. Whoever passed the test would receive a raise of one dollar per hour. Aguilar took and passed the exam. However he was advised that he would not receive the raise due to the fact that his pay rate was already equal to that of a FSS II. Aguilar was advised that in order to receive a raise, he would need to take and pass the FSS III test. Aguilar testified that he learned of the results in July of 2005 and that he was frustrated when he realized he would not get a raise. Aguilar spoke to Rivers about the unfairness of the situation in early July 2005, when he learned of the denial.

During the morning of September 14, 2005, a safety meeting was held which, according to

---

[2] Field Service Specialist Level II.

3

Rivers, Aguilar attended. Fragoso and Lucero were also present. Aguilar testified that he did not recall a meeting that morning.[3] Rivers stated that the subject of the safety meeting was the proper way to carry the ladders[4] assigned to installers.[5] According to Rivers and Lucero's deposition testimony, Aguilar appeared disgruntled, was shaking his head, saying "this isn't fair," huffing and sighing during the meeting.

Aguilar left the installation depot, resolved several "trouble" calls and proceeded to a customer's house to begin an installation. While at the house, he picked up his ladder and a bucket of tools when he felt a "pinch" in his lower back. Aguilar tried to walk it off, but when the pain would not go away, he called in the injury to the installation depot. Rivers called Aguilar and referred him to Appellants' workers' compensation doctor. Aguilar was diagnosed with a lumbar strain and was released back to work on the same day, with medical restrictions that included: no repetitive lifting over 10 pounds; no bending greater than zero times per hour; and no pushing and/or pulling over 15 pounds of force. The physician's note also indicated that Aguilar would reach maximum medical improvement on October 14, 2005, that he was to receive therapy, and that the treatment was authorized by Rivers.

Aguilar returned to the depot that afternoon and was asked to prepare an incident report by Rivers. The report was signed by Rivers and Aguilar. Rivers told Aguilar to take the next day off and return the following day. Fragoso testified that he felt Aguilar's injury was legitimate, and that he was "hundred percent sure" that Aguilar was telling the truth and was not faking the

---

[3] Aguilar did testify that such meetings had occurred in the past, where topics including how to carry your ladder, hydration, working in attics, proper van driving and other areas of safety, were discussed.

[4] Referred to as "little giant ladders" in the testimony.

[5] Fragoso testified that all installers received training with the ladder, which could weigh 50 pounds, including how to carry the ladder, how to fold the ladder, and how to extend the ladder.

4

injury.   Fragoso further testified that Aguilar should not have been carrying his ladder and tools at the same time because doing so was a violation of company policy.   He did not reprimand Aguilar for doing so despite the policy violation being a common way for injuries to occur.   Fragoso testified that Aguilar followed all internal procedures relating to his injury.   Rivers provided similar testimony.

Aguilar returned to work on "light duty" status in the office of the installation department, answering phones, but not returning to the field.   Within a few days of this assignment, Aguilar testified that Rivers, Fragoso, and other workers began mocking his injury.   This included Rivers announcing "[d]oes everybody here know how to carry a ladder, hint hint?" and asking Aguilar for copies and then stating "[c]an you make a copy of this? Are you sure you can carry it?"   Aguilar stated that Rivers also complained to Aguilar:   (1) about how his injury created a negative financial impact on the installation department; (2) that Rivers could not afford Aguilar being in the office and not performing installations; (3) that Aguilar's injury was disrupting the department's quota system; and (4) that Aguilar's inability to do installations was costing Appellants money.   Appellants presented testimony from Gabriel Alderete, Appellants' field service manager, who testified that Rivers was a firm but fair manager and he never saw Rivers treat Aguilar different than any other employee.   Fragoso testified that he did not recall Rivers, any co-workers, or Fragoso himself making any negative comments.

During this time, the workers' compensation insurance carrier, ESIS, requested additional information from Appellants.   Rivers advised ESIS that Aguilar had been upset about the denial of a pay raise following the FSS II exam.   ESIS determined that Aguilar had filed his workers' compensation claim in retaliation for a personnel dispute, and on September 20, 2005, denied the

5

claim. Internal emails indicate that on September 21, 2005, Rivers and Fragoso were included in emails advising that the claim had been denied.

Within a week of his injury, Fragoso and Rivers suggested that Aguilar transfer back to the call center. Eight days after his injury, on September 22, Fragoso presented Aguilar with a transfer request which Aguilar, Fragoso, and Rivers signed. Aguilar testified that he signed the request, not because it was his idea, but because he felt it was the type of work he could physically do. Fragoso testified that even when a transfer request is signed and approved, a transfer may take three to five months. Aguilar testified he was never contacted regarding the transfer. .

The next day, September 23, 2005, Rivers called Aguilar into his office. Rivers told Aguilar that he "had to tell the insurance company about the incident that we had back in July when [Aguilar] didn't get [a] pay increase." Aguilar stated that Rivers told him that he was costing the company too much money and that the workers' compensation claim was going to be denied because Aguilar was retaliating against the company because he did not get his pay raise. Aguilar panicked and tried to convince Rivers that the accusation was false.

Aguilar stated that during the meeting Rivers became irritated, aggressive and angry toward Aguilar and gave him an ultimatum: "if you can't go do installs, then you're fired." Aguilar, feeling panicked, nervous, and afraid, told Rivers he could not do installs because he was injured, but Rivers repeated the ultimatum. Aguilar did not believe he could return to work as an installer without violating the company doctor's restrictions and/or possibly injuring himself further.

Aguilar begged Rivers not to fire him, and fearing for his job asked to speak to Human Resources. Rivers called Debra Pierce ("Pierce"), Appellants' workers' compensation

6

coordinator, and placed her on a speaker phone. Rivers told Pierce that Aguilar did not want to return to his regular duties, while Aguilar advised Pierce of the ultimatum. Pierce proposed that Aguilar "could go on leave without pay," specifically that he could be placed on leave under the Family Medical Leave Act ("FMLA").[6] Aguilar testified that he did not fully understand FMLA, but felt pressure because he was his family's sole source of income. Rivers presented Aguilar with a FMLA request form and instructed him on how to fill out the form. Aguilar, feeling intimidated, complied and in the section of the form requiring him to give a reason, Rivers instructed him to write "hurt my back." The form indicates FMLA leave was requested from September 23 to October 14, 2005 (the actual date given by Aguilar's doctor for his date of maximum medical improvement). Rivers "approved" the request and signed the form. Rivers then instructed Aguilar to go home.

Appellants sent a copy of the approved FMLA paperwork to Aguilar via the U.S. mail, and Aguilar testified that he read it. The FLMA leave request form states: "It is the employee's responsibility to notify the company prior to the scheduled end of leave in order to coordinate job restoration. Failure to return from leave on scheduled return date may result in termination of employment." Aguilar testified that he stayed in contact with Appellants by calling and leaving a single message regarding the status of his medical treatment, but that the call was made after business hours and was left on a machine because he was embarrassed and did not want to speak to anyone. Aguilar did not follow-up with a letter, email or fax and did not submit any FMLA extension forms, testifying that he did not know he was required to do so. Lucero testified that she called Aguilar on October 1, 2005 and left him a message requesting notice of his intent to

---

[6] *See* 29 U.S.C.A. §§ 2601-2654 (West 2009 & Supp.2011)(allowing up to twelve weeks of unpaid leave for health problems).

return.   Rivers and Fragoso testified that they made several unreturned calls to Aguilar regarding his ability to return to work.   Aguilar testified that he did not receive any calls or messages from Appellants while he was on FMLA leave.   There is no record of the attempts to contact Aguilar made by Appellants.   Aguilar received checks paying out his accrued paid-time off while he was on FMLA leave.

Aguilar obtained assistance from the Workers' Compensation Commission and was assigned an ombudsman, who set up meetings to prepare for a hearing on Aguilar's claim.   Aguilar testified that, despite his injury, he had no choice but to look for a temporary job while the workers' compensation case was resolved.[7]   Aguilar testified that he obtained employment at Affina in their call center, with the expectation that he would go back to work for Appellants.   Aguilar began working for Affina on October 10, 2005, and remained with them for less than a month, then began working at Manpower.   Subsequently, he took a job with Honeywell.   Aguilar did not disclose his injury on his job application to Affina, and indicated to Honeywell that he worked for Appellants until "10/2005" and was "looking for a better--better opportunity."   Aguilar never returned to work for Appellants.

Approximately three weeks after the expiration of his FMLA leave, Appellants terminated Aguilar for "job abandonment."   The termination paperwork was processed by Rivers, indicating that Aguilar's medical leave had expired and that Aguilar had failed to notify Appellants of his employment status.

Appellants' policy was to notify employees in writing advising them of the expiration of their leave before termination.   Appellants stipulated that they did not comply with their policy in terminating Aguilar.   Aguilar testified that he did not know he had been terminated until he

_____

[7] In March of 2006, Aguilar's claim was granted in full and he was awarded workers' compensation benefits.

received notice that his satellite service, a benefit for Appellants' employees, had been discontinued.

At trial, over Appellants' objection, a former employee named Lawrence Chavez ("Chavez") testified regarding the absence control policy. Chavez was injured while working as an installer and was terminated for job abandonment. Chavez testified that he disagreed with the diagnosis of the workers' compensation doctor and that Chavez was afraid to drive his work van. Chavez was terminated April 14, 2005 and testified that he had no personal knowledge of Aguilar's injury, claim or any knowledge about Aguilar's termination or the decision-making behind it. Chavez's testified that he heard Rivers and other supervisors make racial slurs, such as "Lazy Mexican" and call another employee a "pussy" and "worthless." Chavez also testified that Appellants would "figure out a way" to get rid of injured employees, and that employees were treated like "slaves."

Following the trial, the jury found that: (1) Appellants discriminated against Aguilar because he filed his workers' compensation claim in good faith; (2) Aguilar was entitled to lost wages, lost future earnings, and compensatory damages; and (3) that there was clear and convincing evidence that Appellants maliciously harmed Aguilar. Judgment was entered, including exemplary damages (as reduced). Appellants filed a Notice of Appeal on November 2, 2010. On November 16, 2010, the trial court heard Appellants' motion for judgment notwithstanding the verdict and motion for a new trial, both of which it denied.

## DISCUSSION

### I. Absence Control Policy

Appellants' first issue alleges there is no evidence of a violation of Chapter 451 of the

Texas Labor Code because Appellants uniformly enforced their absence control policy.

On appeal, a legal sufficiency or "no evidence" challenge will be sustained if the party suffering the adverse decision at trial shows: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005); *El Paso Independent School District v. Pabon*, 214 S.W.3d 37, 41 (Tex.App.--El Paso 2006, no pet.). The jurors are the sole judges of the weight and credibility of witness testimony and if the evidence at trial would allow reasonable, fair-minded jurors to differ in their conclusions, then jurors must be allowed to do so. *City of Keller*, 168 S.W.3d at 819, 822; *Pabon*, 214 S.W.3d at 41. When evidence falls within the zone of reasonable disagreement, a reviewing court cannot substitute its own judgment for that of the trier of fact. *City of Keller*, 168 S.W.3d at 819; *Pabon*, 214 S.W.3d at 41. However, if the evidence allows for only one inference, neither the jurors nor the reviewing court may disregard it. *City of Keller*, 168 S.W.3d at 822; *Contreras v. Bennett*, 361 S.W.3d 174, 179 (Tex.App.--El Paso 2011, no pet.)(noting same standards).

In a factual sufficiency review, we examine all the evidence in the record, both for and against the lower court's findings, and reverse only if it is so against the great weight of the evidence as to be clearly wrong and unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Newberry v. Newberry*, 351 S.W.3d 552, 555-56 (Tex.App.--El Paso 2011, no pet.)(noting same).

Section 451.001 of the Texas Labor Code is a statutory exception to the common-law doctrine of employment-at-will applied in Texas. *Jenkins v. Guardian Industries Corp.*, 16

S.W.3d 431, 435 (Tex.App.--Waco 2000, pet. denied).   The purpose of this section is to protect persons entitled to benefits under the Workers' Compensation Act by preventing them from being discharged for filing claims to collect those benefits, and thus has both remedial and deterrent effects.   *Trico Technologies Corp. v. Montiel*, 949 S.W.2d 308, 312 (Tex. 1997).

Section 451.001 provides that:

A person may not discharge or in any other manner discriminate against an employee because the employee has:

(1) filed a workers' compensation claim in good faith;

(2) hired a lawyer to represent the employee in a claim;

(3) instituted or caused to be instituted in good faith a proceeding under Subtitle A; or

(4) testified or is about to testify in a proceeding under Subtitle A.

TEX.LAB.CODE ANN. § 451.001 (West 2006).

Employees may recover damages for retaliatory discharge under this provision only if they prove that, absent the filing of a workers' compensation claim, the discharge would not have occurred when it did.   *Cont'l Coffee Products Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *Urquidi v. Phelps Dodge Refining Corporation*, 973 S.W.2d 400, 403 (Tex.App.--El Paso 1998, no pet.).

Appellants argue that Aguilar failed to provide evidence that Appellants' absence control policy was not uniformly enforced and that as a result, there cannot be a claim under Section 451.001 as set out in *Continental Coffee Prods. Co*.

Uniform enforcement of a reasonable absence-control provision does not constitute retaliatory discharge under Section 451.001.   *Cont'l Coffee Prods. Co.*, 937 S.W.2d at 451; *Texas*

*Division-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 313 (Tex. 1994). If an employee's termination is required by the uniform enforcement of a reasonable absentee policy, then it cannot be said that termination would not have occurred when it did but for the employee's assertion of a compensation claim or other conduct protected by Section 451.001. *Cont'l Coffee Prods. Co.*, 937 S.W.2d at 451. Consequently, an employer who terminates an employee for violating such a rule cannot be liable for retaliatory discharge so long as the rule is uniformly enforced. *Cont'l Coffee Prods. Co.*, 937 S.W.2d at 451.

Aguilar, in 2004, acknowledged that he received a copy of Appellants' absence control policy, that was applicable to all employees. It provided, in relevant part:

> If an employee does not call in or show up to work on their scheduled day, it is considered a "No Call/No Show" and counts as an unexcused absence. In the event that there are 3 "No Call/No Shows" in a row, it will be considered job abandonment and the employee will be immediately terminated.

Aguilar's FMLA leave was to end on October 14, 2005. Aguilar testified that he called Appellants once during his FMLA leave time and left a message after business hours. Prior to the expiration of his FMLA leave, Aguilar took full-time employment with Affina. Aguilar never returned to Appellants place of employment after he left on September 23, 2005, and he never requested an extension of his FMLA leave. Aguilar had three "No Call/No Show" days following his failure to return to work. Subsequently, Rivers recommended that Appellant terminate Aguilar's employment.

Aguilar argues that the absence policy was not uniformly applied, as he should have been terminated following three "no call/no show" unexcused absences after October 14, 2005. In fact, Appellants' position, as explained by Rivers during his testimony was that employees were automatically terminated after three "no call/no shows" and that there was no discretion in such an

action.   Appellants conceded that there was no clear reason why Aguilar was not terminated as of October 17, 2005.

As noted above, jurors are the sole judges of the weight and credibility of witness testimony.   *City of Keller*, 168 S.W.3d at 819, 922.   More than a scintilla of evidence exists, for the purposes of a legal sufficiency review, where the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005).   The evidence presented would allow a reasonable and fair-minded jury to find that Appellants failed to uniformly enforce their absence control policy where the testimony was clear that Appellants had no discretion but to automatically terminate Aguilar as of October 17, 2005, but failed to do so for nearly three weeks, with no justification or explanation.   Certainly the jury's finding is not against the great weight of the evidence presented so as to be clearly wrong or unjust.   *Ortiz*, 917 S.W.2d at 772. Appellants' first issue is overruled.

## II.      Retaliation

Appellants next argue that the evidence is insufficient to support Aguilar's retaliation claim and that there is insufficient evidence to support the required causal connection between Aguilar's workers' compensation claim and his discharge.

To prove a violation of Section 451.001, it is not necessary to show that a workers' compensation claim was the sole motivation for the termination.   *Cont'l Coffee Prods. Co.*, 937 S.W.2d at 450.   A plaintiff must show a causal connection between his discharge and his compensation claim.   *Id.*   This causal connection may be established by either direct or

13

circumstantial evidence.[8]  *Hernandez v. Am. Tel. & Tel. Co*., 198 S.W.3d 288, 291 (Tex.App.--El Paso 2006, no pet.); *Paragon Hotel Corp. v. Ramirez*, 783 S.W.2d 654, 658 (Tex.App.--El Paso 1989, writ denied).  Circumstantial evidence sufficient to establish a causal link between termination and filing a compensation claim includes:  (1) knowledge of the compensation claim by those making the decision to terminate; (2) expression of a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the discharge was false.  *Cont'l Coffee Prods. Co. v. Cazarez*, 903 S.W.2d 70, 77-8 (Tex.App.--Houston [14th Dist.] 1995), *aff'd in part and rev'd in part on other grounds*, 937 S.W.2d 444 (Tex. 1996).  *See also Wyler Industrial Works, Inc. v. Garcia*, 999 S.W.2d 494, 501 (Tex.App.--El Paso 1999, no pet.)(noting circumstantial factors relating to discrimination such as:  knowledge of the compensation claim by those making the decision to terminate; a negative attitude toward the employee's injured condition; failure to adhere to established company policies; discriminatory treatment of the injured employee in comparison to similarly situated employees; and providing incentives to refrain from reporting on-the-job injuries.).  An additional factor is temporal proximity of the termination to the date of the injury or claim.  *Porterfield v. Galen Hosp. Corp., Inc.,* 948 S.W.2d 916, 919 (Tex.App.--San Antonio 1997, writ denied), *citing Munoz v. H & M Wholesale, Inc.,* 926 F.Supp. 596, 610 (S.D.Tex. 1996)(finding retaliatory motive where employee fired within one month of filing workers' compensation claim); *Worsham Steel Co. v. Arias,* 831 S.W.2d 81, 84 (Tex.App.--El Paso 1992, no writ)(finding retaliatory motive where employee fired a few days following injury in order to

---

[8] If there is no direct evidence of discriminatory discharge, then the employee must rely on circumstantial evidence. *America West Airlines, Inc. v. Tope*, 935 S.W.2d 908, 913 (Tex.App.--El Paso 1996, writ dism'd as moot).

deny employee ability to file claim).   Other circumstantial evidence can include an employer providing incentives to refrain from reporting on-the-job injuries.   *See Tope*, 935 S.W.2d at 913.

In the summary judgment context, once the causal link is established, it is the employer's burden to rebut the alleged discrimination by demonstrating there was a legitimate reason for the discharge.   *Terry v. Southern Floral Co*., 927 S.W.2d 254, 257 (Tex.App.--Houston [1st Dist.] 1996, no pet.).   If the employer can make such a showing, the burden shifts back to the employee to produce controverting evidence of a retaliatory motive.   *Terry*, 927 S.W.2d at 257, *citing Carrozza*, 876 S.W.2d at 314 (Tex. 1994); *Lozoya v. Air Systems Components, Inc.*, 81 S.W.3d 344, 347-48 (Tex.App.--El Paso 2002, no pet.)(citing *Terry* and *Carrozza* in holding that employee failed to rebut that he was terminated in response to a reasonable absence control-policy).

However, once an employment discrimination case has been fully tried on its merits, appellate courts do not engage in a burden-shifting analysis but instead focus on whether the evidence is legally and factually sufficient to support the jury's ultimate finding. *See Rutherford v. Harris County, Texas*, 197 F.3d 173, 180-81 (5th Cir. 1999); *Smith v. Berry Co.*, 165 F.3d 390, 394 (5th Cir. 1999); *Patterson v. P.H.P. Healthcare Corp*., 90 F.3d 927, 933 (5th Cir. 1996).

Aguilar must show that but for the filing of his workers' compensation claim, his termination would not have occurred when it did.   *See Cont'l Coffee Prods. Co.*, 937 S.W.2d at 450.   While there may be some evidence that Appellants had other reasons for terminating Aguilar, the jury is the sole evaluator of the witnesses' credibility and it is entitled to resolve conflicts in the testimony as it sees fit.   *See Emeritus Corp. v. Blanco*, 355 S.W.3d 270, 281 (Tex.App.--El Paso 2011, pet. denied).

15

In the instant case, several of the *Continental Coffee Prods. Co.* and *Wyler* factors are present and establish the initial causal link. For example, there is no question that Appellants had knowledge of the compensation claim and that the people making the decision to terminate were aware of the claim, a factor favoring Aguilar. Aguilar testified that other employees showed a negative attitude towards his condition, while Appellants provided contravening testimony. Appellants deviated from their policies in a number of respects, specifically in that Appellants' policy is to provide transitional or light duty for injured employees, however after only a few days on light duty, Aguilar was told to either return to his regular duties or be fired. Appellantsfurther deviated from their policies by failing to notify Aguilar in writing, advising him of the expiration of his leave prior to terminating his employment.[9]

Aguilar argues that there is evidence that Appellants acted in a discriminatory manner in comparison to other similarly situated employees, however this argument is predicated on the assertion that Appellants contested the workers' compensation claim. As this Court has noted, the exercise of an employer's statutory right to challenge an employee's claim of benefit is not evidence of a negative attitude. *Lozoya*, 81 S.W.3d at 348-49. We find that reasoning applicable to this factor as well, resulting in this factor being, at best, neutral to Aguilar. There is little question that the temporal proximity factor favors Aguilar, as he was injured on September 14, 2005 and was terminated on November 3, 2005.[10]

Taken as a whole, the *Continental Coffee Prods. Co.* factors tend to show the existence of a causal connection between the filing of Aguilar's workers' compensation claim and his discharge.

_____

[9] The record also reflects that Aguilar failed to adhere to company policies when he failed to request additional medical leave and failed to notify the company prior to the end of his FMLA leave to coordinate his job restoration.
[10] Although the evidence established that Aguilar should have been terminated, under a neutral application of Appellants' absence control policy, on or about October 17, 2005.

16

We conclude that Aguilar presented legally and factually sufficient evidence to support the jury's finding that but for the filing of Aguilar's workers' compensation claim his termination would not have occurred. Appellants' second issue is overruled.

### III. Charge Error

Appellants next argue that the trial court erred by giving a constructive discharge instruction in a termination case.

We review the trial court's submission of jury instructions and questions under an abuse of discretion standard. *Gutierrez v. People's Management of Texas I, Ltd.*, 277 S.W.3d 72, 77 (Tex.App.--El Paso 2009, pet. denied). "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003). In reviewing jury charges we consider the parties' pleadings, the evidence presented at trial, and the charge in its entirety. *Gutierrez*, 277 S.W.3d at 77. Even if there was an abuse of discretion by the trial court, we will reverse only where the error in the jury charge is shown to be harmful. *Id.* "'We may not reverse unless the error, when viewed in light of the totality of the circumstances, amounted to such a denial of the rights of the complaining party as was reasonably calculated [to] and probably did cause rendition of an improper judgment.'" *Id.*, *citing Braudrick v. Wal-Mart Stores, Inc.*, 250 S.W.3d 471, 475 (Tex.App.--El Paso 2008, no pet.).

In his petition, Aguilar alleged that Appellants constructively terminated him. The jury charge included the following instruction:

> An employee is considered to have been discharged when an employer makes conditions so intolerable that a reasonable person in the employee's position would have felt compelled to resign.

Appellants objected to the proposed charge on the record, arguing that Aguilar voluntarily resigned and that no evidence was presented indicating working conditions which forced him to resign. Appellants' argument is similar to the one made in *Passons v. University of Texas at Austin*, 969 S.W.2d 560, 562 (Tex.App.--Austin 1998, no pet.), where constructive discharge occurred because conditions were so intolerable that an employee was "compelled to resign." However, the language in the jury charge is identical to other court-approved language for constructive discharge instructions. *See Green v. Industrial Specialty Contractors,* 1 S.W.3d 126, 134 (Tex.App.--Houston [1st Dist.] 1999, no pet.). In *Dillard Dept. Stores, Inc. v. Hecht*, 225 S.W.3d 109 (Tex.App--El Paso 2005, pet. granted, judgm't vacated w.r.m.), this Court noted that "[t]he focus is on the reaction of a reasonable employee to the conditions created by the employer," and that the conditions control, not the employer's state of mind. *Hecht*, 225 S.W.3d at 119.

The record reflects that Aguilar was regarded as a good and competent employee prior to his injury, to the point that he was considered a "very good installer" and was "the best or one of the best." Following his injury, Aguilar was to be placed on light duty. However, within days of his injury, he was mocked and informed that his injury was costing the department and Appellants money and interfering with the department's quota system. Appellant was told that his workers' compensation claim would be denied and that if he could not do installs, he would be fired. Appellants advised Aguilar that his only option, apart from returning to performing installs, was to go on leave without pay pursuant to FMLA. Aguilar testified that he did not fully understand FMLA leave. Aguilar was the sole source of income for his family, including his three children, and as his workers' compensation benefits were not being paid, he felt compelled to seek other employment.

Based on the record, we find that a jury could reasonably conclude that Aguilar was constructively terminated based on the conditions created where Aguilar was given no alternative to returning to full duty as an installer, in spite of his light duty restrictions, other than to accept unpaid FMLA leave. We find no error under the *Gutierrez* analysis stated above. Appellants' third issue is overruled.

## IV. Improper and Prejudicial Character Evidence

Appellants' fourth argument is that the trial court erred in admitting the testimony of Lawrence Chavez, a former employee who was not employed by Appellants at the time Aguilar was injured. Chavez had no personal knowledge of Aguilar's injury, his workers' compensation claim, or his termination. Prior to the start of the trial, Aguilar had indicated his intent to introduce testimony of four former employees of Appellants in order to show hostility towards employees who filed workers' compensation claims. Appellants objected to such testimony. Eventually, the trial court excluded testimony of two of the witnesses, and Chavez was the only witness whose testimony was presented.[11]

Evidentiary matters are within the sound discretion of the trial court. *Cunningham v. Hughes & Luce, L.L.P.*, 312 S.W.3d 62, 70-71 (Tex.App.--El Paso 2010, no pet.). A trial court abuses its discretion when it acts without regard for any guiding rules or principles. *Id.* Stated differently, the appropriate inquiry is whether the ruling was arbitrary or unreasonable. *Id., citing Smithson v. Cessna Aircraft Company*, 665 S.W.2d 439, 443 (Tex. 1984); *Landry v. Travelers Insurance Co.*, 458 S.W.2d 649, 651 (Tex. 1970). We will not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper

---

[11] There is no indication in the record that the trial court ever ruled on the admissibility of the fourth former employee's testimony or that any party ever offered such testimony.

judgment or probably prevented appellant from properly presenting its case to the court of appeals. *See* TEX.R.APP.P. 44.1(a). Even if a trial court erred by improperly admitting evidence, reversal is warranted only if the error probably caused the rendition of an improper judgment. TEX.R.APP.P. 61.1(a); *Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007); *Nissan Motor Co. Ltd. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004); *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998); *Quick v. Plastic Solutions of Texas, Inc.*, 270 S.W.3d 173, 184-85 (Tex.App.--El Paso 2008, no pet.)(holding that the complaining party is not required to prove that "but for" the error, a different judgment would necessarily have resulted, but must show that the error "probably" resulted in an improper judgment). Reversible error usually requires showing that the judgment turns on the particular evidence excluded or admitted. *Quick*, 270 S.W.3d at 184-85.

Appellants argue that the admission of Chavez's testimony constituted improper character evidence which was unduly prejudicial and should have been excluded. Aguilar contends that the testimony was relevant and admissible to show hostile and discriminatory attitudes towards workers' compensation claimants by Appellants.[12]

Clearly, Chavez' testimony was relevant to the uniform application of Appellants' absence control policy and to the Section 451.001 claim. Chavez testified that he was injured while working as an installer and reported the injury to Rivers and that following his injury, Rivers and Fragoso began treating him as though he was "out the door." Chavez testified that even though he

---

[12] Aguilar argues that Appellants waived this issue by failing to object when Chavez's videotaped deposition testimony was played on June 24, 2010. However, at the beginning of the trial, Appellants filed a motion to exclude testimony, including that of Chavez, on the basis: (1) of its prejudicial effect under Rule 403; (2) that it constituted impermissible character evidence under Rule 404; and (3) of a lack of personal knowledge under Rule 601. Appellants made specific, line-by-line objections to the portions of Chavez's videotaped deposition testimony about which they now complain. Appellants properly preserved their objections to Chavez's testimony.

was placed on light duty restrictions, Rivers felt that there was nothing Chavez could do in the department and that no accommodations were made for him following his injury, even though he made suggestions as to work he could do. Chavez testified that, according to Appellants, there was a "miscommunication" and he was told to not come in to work. Someone else allegedly told him to come into work and when Chavez failed to do so, he was terminated, though he testified that he did not remember signing anything stating the reasons for his termination. Chavez's testimony included that he never saw anyone with a workers' compensation injury working once they were injured, noting "[o]nce they got hurt, they were either in the shop or gone."

We do not find that the admission of Chavez' testimony probably rendered an improper judgment given that there was a substantial preponderance of both legally and factually sufficient evidence presented at trial to support Aguilar's claim of retaliation under Section 451.001. The trial court did not err by admitting Chavez's testimony. Appellants' fourth issue is overruled.

## V.    Exemplary damages

Appellants' final issue asserts that the evidence at trial is legally and factually insufficient to support the award of exemplary damages. In order to recover punitive damages in a case alleging a violation of Section 451.001, a plaintiff must prove that the employer "acted willfully and with malice." *Cont'l Coffee Prods. Co.*, 937 S.W.2d at 452. As noted by the court in *Continental Coffee Prods. Co.*, just because an act may be unlawful or wrongful does not necessarily mean that the act was malicious. *Id.* at 454. "Actual malice" is characterized by evidence of ill-will, spite, or a specific intent to cause injury to the employee. *Id.* The *Continental Coffee Prods. Co.* court explained that the act must be of a "wanton and malicious nature, or . . . of a criminal or wanton nature." *Id.* at 454. *See also*

21

TEX.CIV.PRAC.&REM.CODE ANN. § 41.001(7)(West 2008)("'Malice' means a specific intent by the defendant to cause substantial injury or harm to the claimant."). Such evidence must be clear and convincing. *Hecht*, 225 S.W.3d at 117. Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *Id.*

The Texas Supreme Court recently discussed the scope of "actual malice" in *Safeshred, Inc. v. Martinez*, 365 S.W.3d 655 (Tex. 2012). The underlying case in *Safeshred* concerned a *Sabine Pilot*[13] wrongful termination case where the plaintiff sought exemplary damages. The Supreme Court's discussion of workers' compensation retaliation claims for comparison and use in a *Sabine Pilot* analysis has bearing here. *Safeshred*, 365 S.W.3d at 660-61. The Supreme Court noted that "willfulness alone cannot also justify a punitive damages award," and that "more is required." *Id.* at 662, *citing Cazarez*, 937 S.W.2d at 454 (requiring "actual malice"). The *Safeshred* Court noted that the "'substantial injury' referred to . . . must be something 'independent and qualitatively different from the . . . compensable harms associated with [the cause of action].'" *Id.* at 662 (citation omitted). Examples of this type of malice might be "'where the employer circulates false or malicious rumors about the employee before or after the discharge . . . or actively interferes with the employee's ability to find other employment.'" *Id*. (citations omitted). The Supreme Court noted that "[d]amage to the employee's reputation or future employment prospects" was a "qualitatively different injury" than the actual termination, and that "conscious indifference to a risk of that injury" might warrant exemplary damages. *Id.* at 663. The Court also noted other cases where malice was found when the employer engaged in harassment in

---

[13] *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733 (Tex. 1985).

22

connection with a wrongful firing. [14]   The Court stated that malice may exist where "an employer knows the retaliatory firing is unlawful and does it anyway."   *Id.* at 663 (citation omitted).   The Court held that malice could be shown by evidence that the employer, in firing the employee, "consciously ignored a risk of some additional serious harm, such as interference with his future employment, harassment, or terminating his employment knowing the reason for doing so is unlawful."   *Id.*

Aguilar's evidence does not rise to the level of clear and convincing so as to establish that Appellants acted with the requisite ill-will or specific intent to injure Aguilar or consciously ignored a risk of some additional serious harm.   Aguilar's best evidence of malice comes from the testimony of Chavez, who testified about how Appellants treated him following his injury. However he provided no testimony regarding how Appellants treated Aguilar.   *See Safeshred*, 365 S.W.3d at 660-63.   The record reflects that Appellants' accepted the legitimacy of Aguilar's injury, sent him to receive treatment and initially placed him on light duty.   While the record shows that both Rivers and Fragoso acknowledged that they knew it was against the law to discriminate against an employee because he filed a workers' compensation claim, the evidence does not show that Appellants harbored malice or ill-will toward Aguilar personally, or that they undertook actions designed to affect his future employment prospects or his reputation. [15]   There is no evidence in the record that Appellants had a malicious intent to harm Aguilar when they terminated him, let alone evidence sufficient to meet the requisite heightened standard under

---

[14] *See Whole Foods Mkt. Sw., L.P. v. Tijerina*, 979 S.W.2d 768, 779 (Tex.App.--Houston [14th Dist.] 1998, pet. denied)(forcing an employee to sign a false confession, employer commenced pattern of badgering employee immediately after injury, refused to listen to employee's excuse after a false confession); *Lubbock Cnty. v. Strube*, 953 S.W.2d 847, 859-60 (Tex.App.--Austin 1997, pet. denied)(singling an employee out for unfavorable work assignments and conducting an unfair disciplinary hearing prior to the firing).
[15]   Indeed, the record establishes that while on FMLA leave, Aguilar was able to obtain full-time employment elsewhere.

23

*Continental Coffee Prods. Co.* and *Safeshred*.  While Appellants' actions "may not have been handled in the best possible and most ideal manner," (*Hecht*, 225 S.W.3d at 118), they are not "wanton" nor do they ignore the risk of some other serious harm.  *See also Stevens v. Nat'l Educ. Ctrs., Inc.*, 990 S.W.2d 374, 377 (Tex.App.--Houston [14th Dist.] 1999, pet. denied)(finding insufficient evidence of malice where plaintiff was terminated for unlawful reasons, her supervisors were angry with her about her workers' compensation injury and doubted its validity, flung papers at her, and disliked her).  Appellants' final issue is sustained.

## CONCLUSION

Having overruled Appellants' first four issues and sustained Appellants' fifth issue, the judgment of the trial court is affirmed in part and reversed in part.  That portion of the judgment awarding exemplary damages is reversed, and we render judgment that Appellee take nothing on his claim for exemplary damages.


October 17, 2012
                                        CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

24