

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| TEXAS DEPARTMENT OF MOTOR VEHICLES, | § | No. 08-18-00165-CV |
| | § | |
| Appellant, | § | Appeal from the |
| | § | |
| v. | § | 243rd District Court |
| | § | of El Paso County, Texas |
| GERALDINE BUSTILLOS, | § | (TC# 2018DCV1204) |
| Appellee. | § | |

## <u>CONCURRING OPINION</u>

I join the court's opinion because I agree the trial court erred in denying the Department's plea to the jurisdiction. I write separately to clarify that the majority is not relying on evidence excluded by the trial court, because some of the evidence offered by each party overlapped, I believe we should clearly delineate the source of the evidence on which the court relies to render its opinion.

I.

I would resolve this circumstantial-evidence case on the sole ground that Appellee failed to create a genuine issue of material fact as to pretext, which precludes a finding that Appellant acted with retaliatory intent when Appellee was terminated.

Geraldine Bustillos ("Bustillos") filed suit against the Texas Department of Motor Vehicles ("the Department") alleging she was terminated from her employment as a title clerk in retaliation for filing a worker's compensation claim after sustaining an injury at work in violation of Chapter 451 of the Texas Labor Code.[1] In her original petition, Bustillos alleged facts supporting both the existence of a causal link between her termination and her worker's compensation claim, as well as her belief that the reason justifying her termination was a pretext for retaliation.[2]

In support of the causal-link element,[3] Bustillos alleged that "[a]s soon as" her supervisor, James Chesshire, became aware of Bustillos's work injury, he displayed a change in attitude toward her and became more negative. Bustillos also alleged facts establishing a temporal proximity between her termination and work injury.[4] Specifically, Bustillos alleged within thirty-

---

[1] Bustillos originally filed suit on August 16, 2016 in a separate state court action that was removed to federal court by the Department because it raised a federal question arising from an allegation that the self-care provision of the FMLA was violated. *See Bustillos v. TxDMV*, USDC No.3:17-cv-00132-PRM (W.D. Tex. (El Paso Div.)). On February 21, 2018, after the parties engaged in substantial discovery, the federal district court granted the Department's motion for summary judgment as to the FMLA claim on the ground that Congress had not waived sovereign immunity for claims brought under the FMLA's self-care provision. The federal court, however, did not grant summary judgment as to the state-law retaliation claim, opting instead not to exercise its pendent jurisdiction over it and dismissed it without prejudice. Bustillos refiled her retaliation claim in the court below on April 2, 2018.

[2] We apply a burden-shifting analysis when reviewing a claim of retaliatory discharge under Chapter 451. *Hernandez v. Am. Tel. & Tel. Co*., 198 S.W.3d 288, 291 (Tex.App.—El Paso 2006, no pet.). First, the employee must establish a causal link between the filing of the worker's compensation claim and her termination. *Id.* Second, if a causal link is established, the burden shifts to the employer to present a legitimate non-retaliatory reason for the termination. *Id.* Third, if the employer does so, the burden shifts back to the employee to produce controverting evidence of a retaliatory motive. *Id.*

[3] A causal connection between an employee's termination and her compensation claim can be demonstrated through direct or circumstantial evidence. *Echostar Satellite L.L.C. v. Aguilar*, 394 S.W.3d 276, 287 (Tex.App.—El Paso 2012, pet. denied). Circumstantial evidence sufficient to establish a causal link may include: (1) knowledge of the compensation claim by those making the decision to terminate; (2) expression of a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the discharge was false. *Id.* (citing *Cont'l Coffee Prods. Co. v. Cazarez*, 903 S.W.2d 70, 77–8 (Tex.App.—Houston [14th Dist.] 1995), *aff'd in part and rev'd in part on other grounds*, 937 S.W.2d 444 (Tex. 1996)).

[4] *See Aguilar*, 394 S.W.3d at 288 (observing that temporal proximity between termination and the date of injury or claim is "[a]n additional factor" that may be considered when determining whether sufficient circumstantial evidence of causal link exists) (citing *Porterfield v. Galen Hosp. Corp., Inc*., 948 S.W.2d 916, 919 (Tex.App.—San Antonio

six days after the Department became aware of her work injury she was notified that disciplinary action was being taken against her due to her issuance of numerous illegitimate vehicle permits beginning almost a year before her injury. She also alleged she was terminated five days after she received the disciplinary-action notice and forty-one days after she sustained her work injury.

Bustillos also alleged facts supporting her claim that the Department's justification for her termination was false and a pretext for retaliation. Specifically, she alleged that the disciplinary action resulting in her termination was unwarranted because the permits she issued improperly were not her fault, but rather, resulted because she was improperly trained on how to use "VIN assist," a computer program designed to prevent the issuance of permits to illegitimate vehicle identification numbers.

The Department challenged the existence of jurisdictional facts by filing a plea to the court's jurisdiction and a no-evidence motion for summary judgment in a single pleading.[5] The Department argued it could negate some jurisdictional facts alleged in Bustillos's petition with evidence and that other jurisdictional facts could not be established at all because "no evidence" existed supporting them. Specifically, the Department challenged the existence of a causal link by arguing Bustillos could not produce evidence of four out of five *Continental Coffee* factors: (1) a

1997, writ denied)).

[5] Contrary to the majority's opinion, Bustillos does not argue that the Department is not protected by sovereign immunity against invalid claims brought under Chapter 451. Bustillos assumes sovereign immunity applies, but argues that the Department failed to preserve error because some of the evidence on which it relied in the court below to support its plea was excluded by the trial court. According to Bustillos, the exclusion of some of the Department's evidence means her burden to respond to the plea and no-evidence summary judgment was not triggered. However, it is well established that the absence of jurisdiction is an issue that can be raised at any time, even for the first time on appeal, which means no error preservation is required. Moreover, as demonstrated below, the Department's documentary evidence demonstrating its non-retaliatory reason for terminating Bustillos was neither objected to nor excluded. Finally, on the issue of pretext, the burden was on Bustillos to present more than a scintilla of evidence to support her claim that the non-retaliatory reason raised by the Department's evidence was false, which she failed to do.

negative attitude toward Bustillos's injury; (2) a similarly situated employee who was treated more favorably; (3) the stated reason for Bustillos's termination was false; and (4) failure to adhere to established policies when Bustillos was terminated.

The Department also argued that its evidence showed the Department "had a legitimate non-retaliatory reason for the termination—a reason which Bustillos was keenly aware she was under investigation for, and which pre-dated any alleged workplace injury and leave[,]" which "weighs against the inference" that Bustillos was terminated because of her compensation claim. Finally, the Department argued that Bustillos could produce "no evidence" that the Department's reason for terminating her was a pretext for retaliation. The Department repeated its arguments on appeal.

The material facts in this case are all undisputed. Indeed, other than the jurisdictional issue, the only other dispute existing in this case is a legal one. Bustillos argues that Melissa Frescas is a similarly situated employee because she shared the same supervisor with Bustillos and Frescas "was not doing her job" when *Bustillos* issued the illegal permits. I agree with my colleagues that Frescas is not similarly situated to Bustillos. "Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct." *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005) (per curiam) (footnotes omitted). Although "similarly situated" employees need not be "identical," Frescas was a supervisor, not a title clerk, and while she was responsible for training Bustillos and the other clerks on VINAssist, there is no evidence demonstrating that she herself issued illegal permits or that Frescas was directly responsible for Bustillos doing so. Indeed, the evidence demonstrates only that Frescas attempted to train Bustillos and had sent Bustillos an email with instructions on

4

how to create her VINAssist credentials, which Bustillos failed to open. Accordingly, the fact that Frescas was not fired for conduct committed by *Bustillos* does not weigh in Bustillos's favor on the issues of causation or pretext.

Having resolved this legal issue against Bustillos we are left with only undisputed facts from which a jury could not infer retaliatory intent. It is undisputed the Department's stated non-retaliatory reason for terminating Bustillos was that it believed Bustillos issued a large number of illegal permits. It is also undisputed that Bustillos, in her written response to the allegation, did not deny that she had done so, rather, Bustillos contended only that she had done so *unintentionally.* Moreover, instead of accepting responsibility, Bustillos blamed Melissa Frescas for allegedly failing to properly train her to use VINAssist, for which Bustillos claimed she had never received a password. In her deposition, however, Bustillos admitted that Frescas had sent her an email containing the VINAssist password instructions approximately one year earlier, but Bustillos failed to read the email.[6] The undisputed facts further establish that the investigation into

---

[6] In her deposition, Bustillos testified:

> Q: So I'm trying to understand—your testimony has been that you never got given a user and a password to have access to VINAssist.
>
> A: Correct.
>
> Q: So help me understand. You—you did get this. There's this email from 2014, November 2014 correct?
>
> A: Uh-huh. Correct.
>
> Q: And you'll agree with me that this contains a user ID for you to use VINAssist?
>
> A: Correct.
>
> Q: And it contains a password for you to log in for the first time to use VINAssist.
>
> A: Correct.
>
> Q: Did you never use VINAssist after this email?
>
> A: I never got this email.
>
> . . .
>
> Q: Did you –were there occasions where you didn't get emails in your –in your work email, other than this one, that you can think of?
>
> A: I got tons of emails. I didn't look at all of them.
>
> Q: You didn't look at all of the emails?
>
> A: No. I don't remember seeing this one. This is—if you're saying that this is something I had to use or that they wanted me to use it, I would think that they would have told me, "You have an email that you need to open."

Bustillos's misconduct began *prior* to her injury, that Bustillos was removed from her regular duties *prior* to her injury, and that Bustillos herself believed the negative attitude exhibited by "everyone" in the office, including Chesshire, which in her own words, caused her to feel like "a leper" began *prior to* her injury. In addition, Bustillos neither alleged nor attempted to show that the result of the investigation, demonstrating she was the *only* clerk who issued a large number of illegal permits, was incorrect. Finally, the evidence is undisputed that her back injury caused her to miss only about one month of work. The brevity of this comp time versus the severity of the illegal permit issue only further supports the inference that Bustillos was terminated for the legitimate non-retaliatory reason proffered.

In her attempt to show the existence of a genuine issue of material fact as to whether the Department's proffered reason for terminating her was false, Bustillos points to the following facts: (1) temporal proximity between her termination and her injury; (2) Chesshire was aware of Bustillos's contention that the illegal permits resulted, not from her own incompetence, but because Frescas "refused" to train her on VINAssist; (3) Chesshire lacked documentation contradicting Bustillos claim that she was improperly trained; and (4) prior to Bustillos's injury, Chesshire gave Bustillos positive annual reviews. None of these undisputed facts, raises a fact issue as to whether the Department's stated reason was false.

First, it is well established that neither temporal proximity, nor an employer's knowledge

---

Q:      Well, isn't that the purpose of an email, is that you send an email, and then somebody opens it?
A:      I don't use email.
Q:      You don't use email?
A:      No, sir, not at work.   I go to work, not to email.
Q:      So when do you use email?   Just for personal?
A:      Exactly.
Q:      Did you tell Melissa that you don't use email?
A:      No, I don't think we had that conversation.

6

of a worker's compensation claim standing alone is sufficient to raise a genuine issue of material fact with respect to pretext. *Hernandez*, 198 S.W.3d at 293-94. Second, Bustillos does not allege nor attempt to show that other clerks, who were also trained by Frescas, had issued a large number of illegal permits, which might give rise to an inference that Bustillos was not to blame for the issuance of the illegal permits. The absence of such evidence, however, coupled with the fact that Bustillos did not open the email from Frescas instructing her how to log on to VINAssist, precludes her argument that Frescas "refused" to train Bustillos and raises only an inference that the fault for the illegal permits lies with Bustillos, which would support, not negate the Department's stated reason for terminating her. Third, Bustillos's last positive performance review occurred several months *before* the investigation into the issuance of illegal permits was initiated, and the injury occurred *after* the investigation began. This sequence of events raises only the inference that at the time these positive performance reviews were given, Chesshire was unaware Bustillos was issuing illegal permits but once discovered it was *this* fact, not the worker's compensation claim, that caused the change in attitude about her work performance.

In sum, no rational jury could find that the Department's proffered reason for terminating Bustillos under these facts was false or a pretext for retaliation. Because Bustillos did not raise more than a scintilla of evidence as to pretext, a no-evidence summary judgment is proper.

II.

In rendering our decision, we relied on the Department exhibits to which Bustillos did not object, which consisted of Exhibits A, C, C1, C2, C3, D, I, L, and M containing the following evidence: Bustillos's deposition excerpts (Ex. A); a declaration by Jeremiah Kuntz (the Department's Director of Vehicle Titles and Registration Division) (Ex. C); the Department's

7

notice of possible disciplinary action (Ex. C1); Bustillos's response thereto (Ex. C2); the Department's termination letter (Ex. C3); a declaration by Melissa Frescas (Ex. D); Bustillo's report of injury (Ex. I); Chesshire's deposition excerpts (Ex. L); and the federal court order on the Department's motion for summary judgment (Ex. M). Finally, we only relied on those portions of Chesshire's declaration (Ex. B) to which Bustillos did not object.

We also relied on the evidence offered by Bustillos which consisted of the following: the entire sworn depositions of herself and Chesshire (Exs. A-B); her 2014 and 2015 performance evaluations (Exs. C-D); her medical diagnosis following her work injury (Ex. E); copies of the Department's disclosures submitted in the federal proceeding (Ex. F); her FMLA application (Ex. G); the Department's notice of possible disciplinary action (Ex. H); Bustillos response to the notice of possible disciplinary action (Ex. I); the Department's termination letter (Ex. J); and Bustillos's timesheets for October-December 2015 (Ex. K).

YVONNE T. RODRIGUEZ, Chief Justice

January 25, 2021

Before Rodriguez, C.J., Palafox, J., and McClure, C.J. (Senior Judge)
McClure, C.J. (Senior Judge), sitting by assignment