COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| KINGSAIRE, INC. d/b/a KINGS AIRE, INC., | § | No. 08-11-00372-CV |
| | § | |
| Appellant, | § | On Appeal from the |
| | § | |
| v. | § | 327th District Court |
| | § | |
| JORGE MELENDEZ, | § | of El Paso County, Texas |
| | § | |
| Appellee. | | (Cause No. 2009-4709) |

## **O P I N I O N**

Appellant Kingsaire, Inc. d/b/a Kings Aire, Inc. (hereinafter "Kings Aire") appeals an adverse jury verdict and judgment in favor of its former employee, Jorge Melendez (hereinafter "Appellee" or "Melendez") in a worker's compensation retaliation and breach of contract suit. In three issues, Appellant challenges the legal and factual sufficiency of the jury verdict on retaliation, the legal and factual sufficiency of the damages award for the wrongful termination, and the trial court's failure to issue a jury instruction on the issue of an employer's compliance with a cause-neutral absence control policy. For the following reasons, we affirm.

## STATEMENT OF FACTS

### *Factual Background*

Melendez began working as a laborer/welder for Kings Aire, a heating, ventilation, and air conditioning ("HVAC") company, in 2004. Later that year, he transferred into Kings Aire's

electrical contracting services department, starting off as a helper and eventually becoming an apprentice electrician in 2005. Melendez occasionally performed the duties of a journeyman electrician on certain projects before being promoted to apprentice lead man in March 2009.

On July 2, 2009, Melendez sustained injuries during demolition work at a job site when a light fixture fell onto his wrist, severing tendons and lacerating his median nerve. Melendez was rushed to the hospital and met by Fred Quintana, safety coordinator for Kings Aire, who assisted Melendez in filing a claim for worker's compensation. Dr. Robert Chizen of the Concentra Medical Clinic served as Melendez's treating physician for worker's compensation purposes. Dr. Chizen referred Melendez to Dr. Robert Bell, a hand and wrist specialist with the El Paso Orthopedic Surgery Group ("EPOSG") for surgery on July 20, 2009, and subsequent follow-up treatment. Following surgery, doctors from EPOSG and Concentra restricted Melendez from all work until September 3, 2010, when Dr. Chizen released him for work with the restriction that he not lift objects weighing more than three pounds. On October 20, 2010, Dr. Bell again restricted Melendez from working until January 20, 2011. On January 21, 2011, Dr. Chizen released Melendez with the note that he be restricted from grasping, squeezing, and wrist flexion or extension. However, Dr. Bell also signed a return-to-work form for Melendez on October 1, 2009 with the annotation "wife brought husband to doctor's appt."

Kings Aire's employee manual outlines several distinct types of leave available to employees. In addition to vacation, they include an undefined amount of worker's compensation leave and up to twelve weeks of unpaid health leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C.A. §§ 2601–2654 (West 2009 & Supp. 2013). Generally, employees are limited to three months of total leave before their employment is automatically terminated,

although the company reserves the right to authorize leave in excess of three months in certain circumstances upon the employee's written request. The medical leave provision of the manual provides that "[i]f the employee takes leave on account of a serious medical condition, the employee will be required to present a medical certification of fitness to work before being permitted to return. If an employee fails to provide the medical certification within fifteen days after the conclusion of leave, the employee will be terminated."[1]

Kings Aire permits injured employees to use vacation leave instead of receiving income benefits from worker's compensation. In fact, Kings Aire's chief financial officer testified that regular vacation pay exceeds worker's compensation benefits. However, Melendez filed a worker's compensation claim and never elected to use his vacation time. Thereafter, Villa sent Melendez a letter on July 21, 2009, about three weeks after Melendez's injury, informing Melendez that he had been retroactively placed on FMLA leave instead of worker's compensation leave as of July 3, 2009, "in reference to your request." Melendez denied requesting FMLA leave at trial, and Villa admitted in his testimony that Kings Aire had elected to place Melendez on FMLA leave itself. At some point during his leave, Melendez was also demoted from apprentice lead man to helper. Two days after Villa sent the leave letter, the Kings Aire safety coordinator called Melendez at home and told him to turn in his Kings Aire uniforms. Return of uniforms is an event associated with termination under Kings Aire policy. The safety coordinator would only say that he was relaying the message from Villa and provided no explanation why the uniforms had to be returned. Villa later testified that Kings Aire had employees on extended leave return

---

[1] The meaning of this last sentence is disputed by the parties. Kings Aire CFO Villa testified that the fifteen day certification period applies only where an employee returns prior to the expiration of the twelve-week FMLA leave. Melendez argues that this provision has the practical effect of establishing a 15-day "grace period" allowing for employees at the end of their FMLA leave to provide medical certification in order to keep their jobs. We reserve interpretation of this provision for the Discussion section below.

their uniforms, which were rented from a third party, as standard practice. Melendez complied with Villa's instruction.

Melendez's twelve weeks of FMLA leave expired on September 24, 2009, and on September 28, 2009, Kings Aire sent Melendez a letter informing him that his employment had been terminated effective September 25, 2009. Prior to that point, Melendez had been providing regular medical documentation to Kings Aire, but stopped providing doctors' notes after receiving his termination letter. Villa testified that he was aware of Melendez's worker's compensation claim at the time of termination. Prior to termination, Melendez earned $12.50 an hour during regular projects for Kings Aire, with supplemental "health and welfare" payments made for projects worked on Fort Bliss. He also received health insurance, one week paid vacation, and matching retirement contributions up to three percent of his pay. According to Melendez's calculations, he earned an annual salary of approximately $26,000, and accrued $4,652 a year in benefits. Prior to Melendez's termination, Kings Aire terminated four other employees upon expiration of FMLA leave, two of whom had been on leave for worker's compensation injuries. Kings Aire also presented evidence that employees who had taken leave due to worker's compensation injuries but had returned to work before FMLA leave expired were not terminated.

### *Procedural Background*

Melendez brought suit for wrongful termination under the Texas Anti-Retaliation Law, TEX.LAB.CODE. ANN. § 451.001 *et seq*. (West 2006 & Supp. 2013); breach of contract; liability under the *Sabine Pilot* doctrine; attorney's fees; and exemplary damages. The lower court held a jury trial from June 14 to June 16, 2011. At trial, the court granted directed verdicts in favor of Kings Aire on Melendez's exemplary damages claim and his *Sabine Pilot* claim but submitted the

4

wrongful termination and breach of contract claims to the jury. On those claims, the jury rendered verdicts in favor of Melendez and awarded him $6,300 in lost earnings, $91,000 in future lost earnings, $500 in lost benefits, and $26,754 for future lost benefits. Appellant filed a motion for judgment notwithstanding the verdict and a motion for new trial that were both denied by operation of law. Appellant then timely appealed.

## DISCUSSION

Kings Aire brings three issues in this appeal. In Issue One, Kings Aire argues that the trial evidence was legally and factually insufficient to show that its termination of Melendez was a retaliatory act stemming from his filing of a worker's compensation claim and the result of uniform absence control policy enforcement. In Issue Two, Kings Aire also argues that the trial evidence was legally and factually insufficient to justify the jury's damages award for the wrongful termination. Finally, in Issue Three, Kings Aire contends that the trial court's submission of the Texas Pattern Jury Charge for worker's compensation retaliation claims without a special instruction on compliance with a cause-neutral, uniformly enforced absence control policy constituted reversible error. We address each point in turn.

### 1. **Factual and legal sufficiency of the retaliation verdict**

In Issue One, Kings Aire challenges both the factual and legal sufficiency of the jury verdict for Melendez on his retaliation claim.

A legal sufficiency challenge posits that as a matter of law, a jury's verdict cannot be sustained on the evidence presented for one of four reasons: (1) there is "a complete absence of evidence of a vital fact;" (2) "the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact;" (3) there is "no more than a mere scintilla" of

5

evidence proving a vital fact; or (4) the evidence conclusively establishes the opposite proposition of a plaintiff's proffered vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). In other words, where a fact finder may draw only one legal conclusion from the evidence presented, a verdict is legally insufficient when it contravenes that conclusion. *Id.* at 822. However, where the existence of facts and their relative weight falls within the "zone of reasonable disagreement," the appellate courts are without power to overturn a jury's verdict for lack of legal sufficiency. *Id.* We view evidence in the light most favorable to the verdict on a legal sufficiency challenge, indulging "every reasonable inference" in the verdict's favor. *El Paso Independent School Dist. v. Pabon*, 214 S.W.3d 37, 41 (Tex.App.--El Paso 2006, no pet.).

By contrast, a factual sufficiency challenge asserts that a neutral review of the record in its entirety indicates that the jury's verdict is so contrary to the great weight and preponderance of the evidence so as to "shock[] the conscience" or be "manifestly unjust." *El Paso Healthcare System, Ltd. v. Carmona*, 160 S.W.3d 267, 274 (Tex.App.--El Paso 2005, pet. granted, vacated pursuant to settlement). However, "the jury's determination is usually regarded as conclusive when the evidence is conflicting," and "we cannot substitute our conclusions for those of the jury[.]" *Id.*

The Texas Anti-Retaliation Law, TEX.LAB.CODE. ANN. § 451.001 *et seq.*, prohibits an at-will employer from discharging an employee for "fil[ing] a workers' compensation claim in good faith[.]" TEX.LAB.CODE ANN. 451.001(1). Courts typically analyze retaliation claims under a burden-shifting framework. *See Echostar Satellite, L.L.C. v. Aguilar*, 394 S.W.3d 276, 288 (Tex.App.--El Paso 2012, pet. denied). However, in a factual and legal sufficiency review of an employment law case tried on the merits, we need only determine whether the evidence is sufficient "to support the jury's ultimate finding." *Id.* Nevertheless, we briefly set out the

framework to ground our decision conceptually.

To prevail in a retaliation action, an employee must establish through either direct or circumstantial evidence that his discharge would not have occurred at the time it did but for his filing of a worker's compensation claim. *Cont'l Coffee Products Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *Urquidi v. Phelps Dodge Refining Corporation*, 973 S.W.2d 400, 403 (Tex.App.--El Paso 1998, no pet.). Retaliation need not be the sole reason motivating factor behind an employee's termination to succeed on a retaliation claim, merely a contributing factor. *Cont'l Coffee*, 937 S.W.2d at 450. Once the employee has shown a causal link between the discharge and his worker's compensation claim, the burden shifts to the employer to provide a legitimate reason for the termination. *Echostar Satellite*, 394 S.W.3d at 288. The legitimate reason is then presumed to be the proximate cause of termination, and the burden again falls on the employee, who must proffer sufficient evidence of retaliatory intent to establish that retaliation was the actual proximate cause and that the ostensibly legitimate reason is no more than mere pretext. *Id*.

Kings Aire maintains that the verdict was legally and factually insufficient because it uniformly enforced its own cause-neutral absence control policy in terminating Melendez, thus entitling it to a presumption that the proximate cause of Melendez's discharge was, in fact, the policy. It further contends that Melendez failed to provide more than a scintilla of evidence raising fact issues on Kings Aire's uniform enforcement of the policy or evincing any retaliatory intent behind Melendez's termination.

### A. Termination under a cause-neutral absence control policy

Where an employee who has filed a worker's compensation claim is terminated in strict

compliance with a uniformly enforced, cause-neutral absence control policy, the employer is entitled to a presumption that the proximate cause of termination was the policy and not the worker's compensation claim. *Cont'l Coffee*, 937 S.W.2d at 451; *Texas Division–Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 313 (Tex. 1994); *see also Denney v. Dillard Texas Operating Ltd. Partnership*, No. 08-01-00442-CV, 2003 WL 21035409, at \*3 (Tex.App.--El Paso May 8, 2003, pet. dism'd)(mem. op., not designated for publication)(referring to the presumption as "an affirmative defense"). Non-conclusory proof that the absence control policy does not require discharge or is not uniformly enforced creates a fact issue preventing a court from granting the presumption to the employer. *Cf. Carrozza*, 876 S.W.2d at 313-14 (recognizing in a summary judgment disposition that evidence contradicting uniform enforcement creates an issue of material fact); *Baptist Memorial Healthcare Sys. v. Casanova*, 2 S.W.3d 306, 309 (Tex.App.--San Antonio 1999, pet. denied)("some evidence" that discharge is not required under the policy creates a fact issue); *Acme Boot Co., Inc. v. Montenegro*, 862 S.W.2d 806, 809 (Tex.App.--El Paso 1993, no writ). Where an employee's termination is presumed to be the result of an attendance policy, the employee may overcome that presumption and raise a fact issue by providing "some evidence" of retaliatory intent. *Echostar Satellite*, 394 S.W.3d at 288; *Lozoya v. Air Systems Components, Inc.*, 81 S.W.3d 344, 348 (Tex.App.--El Paso 2002, no pet.); *see also Baptist Memorial Healthcare Sys.*, 2 S.W.3d at 309; *Omoro v. Harcourt Brace & Co.*, No. 05-96-01454-CV, 1999 WL 10388, at \*3 (Tex.App.--Dallas Jan. 13, 1999, no pet.)(not designated for publication)(employee may raise fact issue in face of attendance policy compliance by producing competent "evidence of a retaliatory motive").

Here, Kings Aire provided evidence of its absence control policy at trial. Four other

employees had been terminated under this policy, including two employees who exhausted their FMLA leave. Kings Aire also provided evidence that worker's compensation claimants who returned to work prior to the expiration of leave had not been fired. However, Melendez presents alternating theories contending that Kings Aire is not entitled to the absence control presumption because it failed to comply with its own policy. First, Melendez contends that the jury could have found that Kings Aire actually fired Melendez on July 23, 2009, approximately two weeks after his injury, when it asked him to return his uniforms. This termination would have occurred before Melendez exhausted all his available FMLA leave time. Second, even if the jury found that Kings Aire terminated Melendez on September 28, 2009, the absence policy's language triggered a 15-day "grace period" after his FMLA leave expired allowing him to submit medical certification justifying his continued employment with Kings Aire. Under this theory, Melendez argues that since the policy did not require termination until after the grace period concluded, he was still an employee-at-will and thus, his dismissal was proximately caused by his worker's compensation claim.

We find Melendez's first argument specious at best. As Kings Aire points out, in its brief turning in uniforms may be associated with a termination, but it was also the company's standard practice to return the uniforms that Kings Aire rented from a third party when the employee was expected to be on extended leave. We question whether reasonable jurors would see a request to return uniforms as proof of a termination decision, especially when viewed in light of the fact that Melendez testified he had to return his uniforms on a semi-regular basis for cleaning.

However, we are more amenable to Melendez's second theory of termination. Melendez argues that the judgment was factually and legally sufficient because language in Kings Aire's

9

leave policy essentially creates a 15-day "grace period" after the expiration of FMLA leave during which employees must submit documentation that they are fit to work in order to retain their positions. Since his employment was terminated after exhausting his FMLA leave during the 15-day grace period, Melendez argues that the absence policy cannot have been uniformly applied as a matter of law. The language in question purportedly creating the grace period is as follows:

> If the employee takes leave on account of a serious medical condition, the employee will be required to present a medical certification of fitness to work before being permitted to return. If an employee fails to provide the medical certification within fifteen days after the conclusion of leave, the employee will be terminated.

Kings Aire insists that the language does not, in fact, create a 15-day grace period. Jose Villa testified that the policy does not extend FMLA leave beyond twelve weeks, and that another provision of the policy provides that "[i]n no event can family/medical leave last longer than twelve weeks." Kings Aire urges us to read the 15-day medical certification period as applying only to "an employee returning from a leave before the 12 weeks has expired[.]" In other words, once an employee returns to work, he must provide Kings Aire with certification of his serious medical condition within 15 days or face termination. However, this reading completely contradicts the first sentence of the paragraph in question, since an "employee will be required to present a medical certification of fitness to work *before* being permitted to return." [Emphasis added]. Furthermore, the policy cannot be fairly read as requiring a medical certification to return to work and another one fifteen days later for verification purposes, since when read as a whole, "the medical certification" referenced in the second sentence appears to refer back to the antecedent medical certification mentioned in the first sentence.

The policy language is equally amenable to Melendez's reading that Kings Aire's

10

mandatory duty to terminate employment is suspended for fifteen days after the expiration of FMLA leave pending the employee's presentment of medical certification to return to work. In reviewing an absence policy on a factual and legal sufficiency challenge, we need not resort to formal canons of construction where the "policy is so vague that reasonable people could disagree about its meaning[.]" *Cf. Lozoya*, 81 S.W.3d at 349 (assuming policy is vague, plaintiff must still show evidence of discriminatory intent in an adverse employment action). Even so, we note that Kings Aire's reading of the 15-day certification period language is strained and essentially renders the first sentence of the policy paragraph nugatory. *Cf. Meritor Automotive, Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 90 (Tex. 2001)(noting in statutory construction context that "[w]hen possible, each sentence, phrase, clause and word [should be] given effect, so that the [text] makes sense as a cohesive whole").[2] Furthermore, there is no language indicating that Kings Aire reserves the right to terminate employment during the 15-day medical certification period, only language unambiguously indicating that it *will* terminate employment if an employee fails to submit the appropriate certification after the 15-day period. Likewise, the language is silent on the issue of whether Appellant needed to undertake affirmative steps prior to expiration of the 15-day certification period to hold that time period open and prevent his termination.

The policy language is not clear and unambiguous. Rather, the questions of whether Appellant's discharge was required, whether the policy created a 15-day grace period, and whether Kings Aire complied with the terms of the policy fall within the "zone of reasonable disagreement," and thus, the province of the jury. *See Echostar Satellite LLC,* 394 S.W.3d at 287

---

[2] We note that the jury's reading of this language as a 15-day grace period would not render the language limiting family/medical leave to 12 weeks meaningless. Instead, the jury would have been free to read the grace period not as an extension of family/medical leave, but rather as a way of suspending the overall termination clock pending medical certification of fitness to work. This reading would render all parts of the policy meaningful and internally consistent.

(where employee is not fired within the timeframe required by the policy, the jury is free to draw the inference that the policy was not uniformly applied). Kings Aire argues in the alternative that the fact that Melendez was terminated prior to 15-day medical certification "grace period" after FMLA leave expired is irrelevant, since Melendez would not have been medically fit to return to work at that time anyway. However, termination prior to the 15-day medical certification period may be viewed as proof that Kings Aire did not "uniformly apply" its absence control policy. Here, Melendez provided a plausible construction of the policy language and elicited evidence that he was fired during the 15-day grace period when policy language did not require his termination. As such, the jury was free to draw the inference that Kings Aire was not acting in accordance with the terms of its cause-neutral absence control policy and not entitled to the presumption of legitimacy.

## B. Retaliatory intent

The fact that an employer terminated an employee in violation of the terms of a cause-neutral absence control policy is not enough to uphold a jury award as legally sufficient under the Texas Worker's Compensation Act. The aggrieved employee must also show more than a scintilla of evidence that his employer's action was caused by his filing a worker's compensation claim. *See Cont'l Coffee*, 937 S.W.2d at 450. "More than a scintilla of evidence exists where the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005)(internal citations and quotation marks omitted).

Where direct evidence of motive is unavailable, circumstantial factors that the courts may consider in assessing causal linkage and retaliatory intent include temporal proximity of the

12

termination to the date of the injury or claim, *Porterfield v. Galen Hosp. Corp., Inc.*, 948 S.W.2d 916, 919 (Tex.App.--San Antonio 1997, writ denied); *Worsham Steel Co. v. Arias*, 831 S.W.2d 81, 84 (Tex.App.--El Paso 1992, no writ)(retaliatory motive where employee fired a few days after injury to prevent employee from filing worker's compensation claim); employer incentives to refrain from reporting injuries, *America West Airlines, Inc. v. Tope*, 935 S.W.2d 908, 913 (Tex.App.--El Paso 1996, writ dism'd as moot); and the five so-called *Continental Coffee* factors: (1) knowledge of the worker's compensation claim filing by employer decision-makers; (2) expression of negative attitude toward employee's injuries; (3) failing to adhere to company policies; (4) disparate treatment as between similarly situated employees; or (5) other evidence that the stated reason for discharge was false. *Cont'l Coffee Prods. Co. v. Cazarez*, 903 S.W.2d 70, 77 (Tex.App.--Houston [14th Dist.] 1995), *aff'd in part and rev'd in part on other grounds*, 937 S.W.2d 444 (Tex. 1996); *Wyler Industrial Works, Inc. v. Garcia*, 999 S.W.2d 494, 501 (Tex.App.--El Paso 1999, no pet.). No one factor is determinative, and although Melendez is not required to produce "evidence on all five of the *Continental Coffee* factors" to meet his burden, he must produce "sufficient circumstantial evidence on a majority of these factors." *Armendariz v. Redcats USA, L.P.*, 390 S.W.3d 463, 466 (Tex.App.--El Paso 2012, no pet.).

In support of its position, Kings Aire presented evidence that their safety coordinator met Melendez at the hospital and assisted him in filling out a worker's compensation claim. The termination took place about two months after the claim was filed, cutting against a temporal proximity argument. *See, e.g., Porterfield,* 948 S.W.2d at 919 (employee fired on Monday morning after receiving word on Friday that her injury was compensable). However, Melendez has offered enough proof on a majority of *Continental Coffee* factors to uphold the verdict's legal

13

and factual sufficiency. First, Melendez adduced evidence that Villa admitted to knowing about the worker's compensation claim at the time the termination decision was made. *Garcia*, 999 S.W.2d at 501 (recognizing knowledge of the claim as a *Continental Coffee* factor). Second, as stated previously, Melendez raised a fact question as to whether Kings Aire fired him in violation of its own policy during a purported 15-day window after FMLA leave expired, which meets the "failing to adhere to company policies" prong of *Continental Coffee*. Third, Melendez established "other evidence that the stated reason for discharge was false" – namely, that Kings Aire's leave policy favoring more lucrative vacation time over worker's compensation leave acted as an incentive program designed to prevent employees from reporting injuries, *Tope*, 935 S.W.2d at 913, and that when Melendez refused to take vacation leave, he was placed on FMLA leave anyway.

There is a fact question as to whether Melendez elected to switch from the indefinite worker's compensation leave to the time-limited FMLA leave himself – in which case Kings Aire properly allowed a cause-neutral absence control "clock" to expire before termination – or whether Kings Aire switched him to time-limited FMLA leave without his consent for the specific purpose of retaliating from behind a cause-neutral veil for taking worker's compensation leave instead of vacation leave when his injury occurred. The jury could also infer that when Melendez persisted in filing the claim and taking worker's compensation time, Kings Aire sought to retaliate against Melendez by demoting him and placing him on FMLA leave when he requested worker's compensation leave in order to run out the clock on his employment.

We believe that: (1) Villa's knowledge of Melendez's worker's compensation claim; (2) the fact that Kings Aire's policy encourages employees to take time-limited vacation time over

14

indefinite worker's compensation time; (3) the fact that Melendez was apparently placed on FMLA leave in spite of requesting separate worker's compensation time; (4) the fact that Melendez was demoted during leave time; and (5) the fact that the leave policy's language appears to create a 15-day medical certification grace period after FMLA leave lapses are all sufficient to give rise to a permissible inference of retaliation.

Because the circumstantial evidence supporting the jury's verdict "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions," *Hernandez*, 164 S.W.3d at 388, we lack the authority to overturn the jury's finding of retaliation for lack of legal sufficiency. Further, because the jury's finding of retaliation does not go against the great weight and preponderance of the evidence contained in the record as a whole, we cannot disturb the verdict for factual sufficiency. As such, we uphold the jury's verdict.

Issue One is overruled.

## 2. Factual and legal sufficiency of damages

In Issue Two, Kings Aire contends that the trial evidence is legally and factually insufficient to support the jury's damages award for the wrongful termination.

"[A] jury cannot 'arbitrarily assess an amount neither authorized nor supported by the evidence presented at trial.'" *West Telemarketing Corp. Outbound v. McClure*, 225 S.W.3d 658, 667 (Tex.App.--El Paso 2006, pet. granted, judgm't vacated w.r.m. pursuant to settlement). If conflicting evidence creates a "range" or spectrum of possible damages awards "supported by some evidence," the jury's decision within that range is "immune to a legal sufficiency attack." *Parallax Corp., N.V. v. City of El Paso*, 910 S.W.2d 86, 92 (Tex.App.--El Paso 1995, writ denied); *cf*. *First State Bank v. Keilman*, 851 S.W.2d 914, 930 (Tex.App.--Austin 1993, writ denied)(where

15

the parties presented two different amounts of back-due interest calculated using different methods, jury may not award amount between those two numbers). "[L]oss of earning capacity that a plaintiff will suffer in the future is always uncertain and is left largely to the jury's sound judgment and discretion," and generally a jury is justified in awarding any amount of money up to and including earnings projected through retirement at age 65. *See Household Credit Services, Inc. v. Driscol*, 989 S.W.2d 72, 90 (Tex.App.--El Paso 1998, pet. denied). "[W]here there is proof to support a range of damage options, the mere fact that nothing in the record shows how the jury arrived at a specific amount is not fatal to the verdict." *McClure*, 225 S.W.3d at 667.

Melendez calculated that he earned a salary of $26,000 a year and accrued $4,652 in annual benefits. He requested $312,000 in lost wages and $56,000 in lost benefits, which amount to thirteen years of projected work for Kings Aire prior to the accident. Kings Aire requested the jury to award Melendez nothing. The jury awarded Melendez $91,000 in future lost earnings, $26,754 in lost future benefits other than earnings, $6,300 in lost current earnings, and $500 in lost current benefits. Overall, the jury's award represents about 3.5 years of lost wages and nearly six years of lost benefits. Although we cannot determine why the jury chose to multiply the lost future earnings and lost future benefits amounts by different lengths of time, those amounts fell within the permissible range of options available to the jury. As such, the jury's award of damages is legally sufficient. Further, we do not find that the jury's award goes against the great weight and preponderance of the evidence, rendering it factually sufficient. We uphold the damages assessed against Kings Aire.

Issue Two is overruled.

### 3. Jury charge error

16

In Issue Three, Kings Aire contends that the trial court committed reversible error when it failed to issue a specific charge on Kings Aire's compliance with an absence control policy. The trial court submitted the following charge, modeled after the Texas Pattern Jury Charge, State Bar of Tex., *Texas Pattern Jury Charges – Business-Consumer-Insurance-Employment*, PJC 107.5 (2012), to the jury:

> Did Kings Aire discharge Jorge Melendez because he filed a worker's compensation claim in good faith?
>
> There may be more than one cause for an employment decision. An employer does not discharge an employee for filing or causing to be instituted a worker's compensation claim in good faith if the employer would have discharged the employee when he did even if the employee had not filed or caused to be instituted a worker's compensation claim in good faith.

> Kings Aire proposed, and the trial court rejected, the following supplemental charge:

> If Kings Aire terminated Jorge Melendez pursuant to the uniform enforcement of a reasonable leave of absence policy, then Mr. Melendez can not prove that his termination would not have occurred when it did but for the filing of his workers [sic] compensation claim.

> Kings Aire also requested this question: "Was Mr. Jorge Melendez's termination required by the uniform application of a reasonable leave of absence policy?" The trial court also denied inclusion of this question in the charge.

This Court reviews jury charge errors in two parts. First, the appellant must establish that the trial court abused its discretion by failing to grant the charge. *Gutierrez v. People's Management of Texas I, Ltd.*, 277 S.W.3d 72, 77 (Tex.App.--El Paso 2009, pet. denied). Second, if trial court did abuse its discretion, we review the record as a whole to determine whether the appellant suffered actual harm. *Id.* "We may not reverse unless the error, when viewed in light of the totality of the circumstances, amounted to such a denial of the rights of the complaining

17

party as was reasonably calculated [to] and probably did cause rendition of an improper judgment." *Gutierrez*, 277 S.W.3d at 77, *citing Braudrick v. Wal–Mart Stores, Inc.*, 250 S.W.3d 471, 475 (Tex.App.--El Paso 2008, no pet.)(internal quotation marks omitted).

We have previously rejected the notion that failure to grant a supplemental instruction on uniform enforcement of absence control policies constitutes an abuse of discretion. *See*, *e.g.*, *Housing Authority of City of El Paso v. Guerra*, 963. S.W.2d 946, 953-54 (Tex.App.--El Paso 1998, pet. denied). Texas Pattern Jury Charge 107.5 "adequately advised the jury of the factual issues to be considered[.]" *Dallas County v. Holmes*, 62 S.W.3d 326, 332-33 (Tex.App.--Dallas 2001, no pet.). "[T]he jury need not and should not be burdened with surplus instructions, even if they are proper statements of the law." *Dallas County*, 62 S.W.3d at 332.

Thus, we do not find that the trial court abused its discretion by "act[ing] in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003). Instead, the trial court complied with prior precedent from this Court and our sister circuits by not burdening the jury with surplus information. The jury charge was adequate, and the trial court did not commit error.

Issue Three is overruled. We affirm the trial court's judgment.


November 22, 2013
                                        YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.


18