ACCEPTED
12-14-00155-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
7/9/2015 11:15:24 AM
CATHY LUSK
CLERK

# NO. 12-14-00155-CV

IN THE TEXAS COURT OF APPEALS FOR THE TWELFTH DISTRICT
TYLER, TEXAS

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
7/9/2015 11:15:24 AM
CATHY S. LUSK
Clerk

\* \* \* \* \*

## BRENDA BREWER, DEANNA MEADOR, PENNY ADAMS, and SABRA CURRY

### APPELLANTS

### V.

## LOWE'S HOME CENTERS, INC.,

### APPELLEE

\* \* \* \* \*

On Appeal from the 3rd Judicial District Court
Anderson County, Texas
District Court Cause No. 3-41083

\* \* \* \* \*

## APPELLANTS' REPLY BRIEF

Respectfully submitted,

Matthew R. Pearson
State Bar No. 0078817
mpearson@gplawfirm.com
GRAVELY & PEARSON, LLP
425 Soledad, Suite 600
San Antonio, Texas 78205
(210) 472-1111 Telephone
(210) 472-1110 Facsimile

Brendan K. McBride
State Bar No. 24008900
Brendan.mcbride@att.net
THE MCBRIDE LAW FIRM of counsel
  to GRAVELY & PEARSON. LLP
425 Soledad, Suite 620
San Antonio, Texas 78205
(210) 472-11111 Telephone
(210) 881-6752 Facsimile

### ATTORNEYS FOR APPELLANTS

1

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ...................................................................................2

TABLE OF AUTHORITIES .............................................................................3

INTRODUCTION .............................................................................................4

ARGUMENT AND AUTHORITIES ................................................................7

   I.   LOWE'S ARGUMENT IMPLICITLY DISREGARDS THE STANDARD OF REVIEW APPLICABLE TO DIRECTED VERDICTS ................................................7

   II.   THERE IS MORE THAN A SCINTILLA OF EVIDENCE THAT APPELLANTS' WORKERS' COMPENSATION CLAIMS WERE A CAUSE OF THEIR TERMINATIONS. ................................................................................8

   III.   THE LEAVE OF ABSENCE POLICY WAS NOT FOLLOWED; THIS CASE IS FAR MORE SIMILAR TO *ECHOSTAR* THAN THE CASES RELIED ON BY LOWE'S.........18

CONCLUSION .................................................................................................24

CERTIFICATE OF SERVICE ........................................................................26

CERTIFICATE OF COMPLIANCE ...............................................................26

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Armendariz v. Redcats USA, L.P.*, 390 S.W.3d 463 (Tex. App. – El Paso 2012, no pet.)...........14

*Aust v. Conroe Indep. Sch. Dist.*, 153 S.W.3d 222 (Tex. App. – Beaumont 2004, no pet.) ..........14

*Baptist Memorial Healthcare Sys. v. Casanova*, 2 S.W.3d 306 (Tex. App.--San Antonio 1999, pet. denied) .................................................................................................................16

*Benners v. Blanks Color Imaging, Inc.*, 133 S.W.3d 364 (Tex. App. – Dallas 2004, no pet.)..........10

*City of Keller v. Wilson*, 168 S.W.3d 802 (Tex. 2005) ...................................................9, 22

*Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227 (Tex. 2004) ........................6, 8

*Collora v. Navarro*, 574 S.W.2d 65 (Tex. 1978) ...................................................................8

*Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444 (Tex. 1996) ...............................passim

*Echostar Satellite, L.L.C. v. Aguilar*, 394 S.W.3d 276 (Tex. App. – El Paso 2012, pet. denied) .................................................................................................................passim

*Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386 (Tex. 2005) ........................................24

*Henson v. Reddin*, 358 S.W.3d 428 (Tex.App. – Fort Worth 2012, no pet.)...................................9

*Jenkins v. Guardian Indus. Corp.*, 16 S.W.3d 431 (Tex. App. – Waco 2000, pet. denied) ..............9

*Kings Aire, Inc. v. Melendez*, 416 S.W.3d 898 (Tex. App. – El Paso 2013, pet. filed)...........passim

*Omoro v. Harcourt Brace & Co.*, No. 05-96-01454-CV, 1999 Tex. App. LEXIS 133, 1999 WL 10388, at *3 (Tex. App. – Dallas 1999, no pet.)(mem. op.) ......................................16

*Parker v. Valerus Compression Servs.*, LP, 365 S.W.3d 61 (Tex. App. – Houston [1st Dist. 2011, pet. denied)....................................................................................................24

*Texas Division-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312 (Tex. 1994) ............................................24

*White v. Southwestern Bell Tel. Co.*, 651 S.W.2d 260 (Tex. 1983) ....................................6, 8

## INTRODUCTION

There are two glaring infirmities in the argument presented by Lowe's Home Centers, Inc. ("Lowe's") in its brief to this Court. First, a careful review of the argument reveals that Lowe's is fundamentally misunderstanding or misapplying the standard of review applicable to appellate review of a directed verdict. Lowe's arguments are repeatedly characterized in terms of how the evidence for each of the *Cont'l Coffee* factors "weighs" in favor of Lowe's. However, that is not the standard of review applicable to the directed verdict in this case. Rather, the Court is tasked with determining whether there is at least a scintilla of evidence to support the *Cont'l Coffee* factors.[1]

Framed around the proper scope of this Court's review of a directed verdict, the Court's task is very specific and direct: the Court must determine if there is a scintilla of evidence to support at least three of the five *Cont'l Coffee* factors, which is all that is required under Texas law to demonstrate causation in a workers' compensation retaliation case. This is not an evidentiary weighing process as Lowe's implies. Weighing evidence is for a jury, the trial court's directed verdict prevented a jury from weighing the evidence.

The Court must "consider all of the evidence in a light most favorable to the party against whom the verdict was instructed and disregard all contrary evidence and inferences" and "give the losing party the benefit of all reasonable inferences created

---

[1] *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996).

by the evidence." *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 233-234 (Tex. 2004) (*citing White v. Southwestern Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex. 1983)). Applying this standard, there was substantial evidence to support – not just three – but all five of the *Cont'l Coffee* factors.

The second infirmity is Lowe's inability to distinguish the most directly on-point case cited by either party in their briefing to this Court. The case most similar to this one is *Echostar Satellite, L.L.C. v. Aguilar*, 394 S.W.3d 276 (Tex. App. – El Paso 2012, pet. denied), in which the El Paso Court of Appeals found sufficient evidence of retaliatory motive and causation where a company "deviated from their policies" by making an employee who had made workers' compensation claims work against their light duty restrictions or be fired, and further deviated from their policies by failing to notify the worker in writing, advising him of the expiration of his leave prior to terminating his employment." *Id.* at 288. Lowe's briefing does not even address the *Echostar* case, despite that it was extensively discussed and block-quoted in Appellants' brief. Appellants' Brief at p. 45-46.

The record evidence here shows that Lowe's management actually knew these employees were working on light duty restrictions and had made workers' compensation claims. There is more than a scintilla of evidence that these same Lowe's managers made disparaging and negative remarks not just about workers' compensation claimants in general, but these four workers in particular, including testimony from two individuals who were personally present in discussions with those

5

managers and heard such statements. There is more than a scintilla of evidence that each of the Appellants was worked against their light duty restrictions and threatened with termination and insulted when they protested – just as in *Echostar*. There is more than a scintilla of evidence that Lowe's managers did not notify the employees that they had been put on a "personal leave" system with a limited duration – just as in *Kings Aire, Inc. v. Melendez*, 416 S.W.3d 898 (Tex. App. – El Paso 2013, pet. granted). Finally, there is evidence that none of these employees were warned they would be terminated under the personal leave policy (to which they did not even know they had been subjected) until *after* each of them had already been terminated – just as in *Echostar*.

Considering all of the evidence in the light most favorable to Appellants, as the Court must, there was more than a scintilla of evidence to establish retaliation was the cause of their terminations and that Lowe's attempt to rely on its personal leave policy, which it did not even follow, was a false pretext. Under the proper standard of review, this evidence must be weighed by a jury. The directed verdict was error and the judgment must be reversed and remanded for a full trial on the merits.

## ARGUMENT AND AUTHORITIES

**I.     LOWE'S ARGUMENT IMPLICITLY DISREGARDS THE STANDARD OF REVIEW APPLICABLE TO DIRECTED VERDICTS**

With regard to almost every *Cont'l Coffee* factor, Lowe's selectively chooses parts of the record it believes supports its factual positions and argues that the evidence "weighs" in favor of Lowe's. Appellee's Brief at pp. 26, 28, 31-32 and 34. This is not a proper legal argument in support of a directed verdict. In the procedural posture in which this case stands before the Court, this Court's task is not to weigh evidence that was never considered by a jury.

As explained in Appellants' principal brief, in reviewing a directed verdict, the Court must determine whether there is more than a scintilla of evidence to raise a fact issue on the challenged elements. *See Coastal Transp.* (*citing Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex. 1978)). The Court must "consider all of the evidence in a light most favorable to the party against whom the verdict was instructed and disregard all contrary evidence and inferences" and "give the losing party the benefit of all reasonable inferences created by the evidence." *Coastal Transp.* at 233 (*citing White v. Southwestern Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex. 1983)).

The standard of review for evidentiary sufficiency does *not* allow for the arguments Lowe's makes here – picking through the record and finding its own controverting favorable evidence that "weighs" in its favor. Instead, the Court must credit favorable evidence if reasonable jurors could, and *disregard contrary evidence unless*

7

*reasonable jurors could not. City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005)(emphasis added); *Henson v. Reddin*, 358 S.W.3d 428, 434 (Tex. App. – Fort Worth 2012, no pet.).

Under this standard, there was more than a scintilla of evidence to support more than three of the five *Cont'l Coffee* factors and to support the conclusion that Lowe's attempt to rely on its personal leave policy in terminating Appellants' employment was a false pretext.

## II.      THERE IS MORE THAN A SCINTILLA OF EVIDENCE THAT APPELLANTS' WORKERS' COMPENSATION CLAIMS WERE A CAUSE OF THEIR TERMINATIONS.

Since rare is the case where an employer expressly admits a retaliatory motive for a termination, Texas law permits an employee to prove the causal link between the adverse employment decision and the workers' compensation claim by direct or circumstantial evidence. *Jenkins v. Guardian Indus. Corp.*, 16 S.W.3d 431, 436 (Tex. App. – Waco 2000, pet. denied). Both parties agree that circumstantial evidence of causation in a retaliation case is determined by considering the factors set forth in *Cont'l Coffee*. Those factors are:

(1) knowledge of the compensation claim by those making the decision on termination;

(2) expression of a negative attitude towards the employee's injured condition;

(3) failure to adhere to established company policies;

8

(4) discriminatory treatment in comparison to similarly situated employees; and

(5) evidence that the stated reason for the discharge was false.

*Cont'l Coffee*, 937 S.W.2d at 451; *Benners v. Blanks Color Imaging, Inc.*, 133 S.W.3d 364, 369 (Tex. App. – Dallas 2004, no pet.).

*1. Lowe's managers knew of the claims:* Lowe's plays a bit of a shell game when it comes to whether local managers were those making the termination decision. While Lowe's concedes, as it must, that there was evidence the managers at the Palestine store were aware that all four employees had made workers' compensation claims and knew that all four were back on light duty under Lowe's workers' compensation policies, they claim that the final decision to terminate them under the personal leave policy was made by someone else at Lowe's corporate. Lowe's argument rests on the false assumption that the retaliation was at the moment the termination letters were issued rather than when the decision was made at the store level to force the employees to work against their light duty restrictions and then place them on limited personal leaves of absence without their approval or knowledge.

That switch, which happened at the local Palestine store level, made their terminations inevitable. Essentially, the evidence supports the reasonable inference that the local store manager knew about the workers' compensation claims, wanted these employees to become Lowe's next customers, and figured out that he could rig the situation to automatically terminate the four employees by forcing them to stop

9

working by threatening and intimidating them to work against their physical restrictions and then categorizing them as taking personal leave, triggering a clock that would guarantee their termination.

The decision that resulted in their termination was made at the store level, not by Lowe's corporate, as Lowe's argues. The same managers that knew of the claims, expressed negative attitudes toward them and admitted to wanting to make them "Lowe's next customers" are the same managers who took those actions that would necessarily culminate in all four employees being terminated. How this was accomplished, and the record citations for each part of that explanation, is described in detail on pages 22-25 of Appellants' principal brief. In sum, however:

- Under Lowe's leave of absence policies, there was no time limit on leave taken by a workers' compensation claimant, but there was a maximum leave established for personal leaves of absence. (RR6:6-9)

- To place someone into the limited personal leave and trigger these maximum periods, a form has to be filled out either by the employee or by someone at the store designating that the employee was taking personal leave, and this would then be coded into Lowe's computer system. (RR6:13-15)

- Once the employee is designated at the store level as being on a personal leave instead of a workers' compensation leave, Lowe's system then treats that employee as subject to the maximum number of days allowed under the Leave of Absence policy and will automatically terminate those employees when they exceed the maximum. (RR6:9-12)

- None of the four Appellants requested to be placed on personal leave. (RR6:26-27, 30, 31) None of them were aware that they were subject to a maximum period of leave until *after* they were already terminated,

10

either, because they did not even receive warning notices before they were terminated. (RR4:28, 132, 203; 5:79)

There is more than a scintilla of evidence that the terminations of these four employees were carried out using Lowe's system by its local managers at the store level. Put another way, the retaliation at issue in this case was working employees against restrictions so that they could be placed on a conveyor belt toward inevitable termination without their knowledge or consent. There is no genuine dispute that the managers who retaliated against Brewer, Meador, Adams and Curry were well aware that all four employees were on light duty restrictions because they had made workers' compensation claims.

The evidence shows the store manager, Gonzalez, and other high-level managers including Mike Bohem, a Zone Manager, and Nick Boren, the Operations Manager, knew about and expressed negative attitudes about these four employees because of their injuries is detailed on pages 35-36 of Appellants' principal brief. Thus, there is more than a scintilla of evidence to support the first of the *Cont'l Coffee* factors – the managers that took the actions resulting in the terminations of these employees actually knew that each employee was on workers' compensation.

2.      *Lowe's managers expressed a negative attitude.* The second factor is also supported by sufficient evidence. Though Lowe's points to testimony wherein its managers deny any retaliatory motive, reviewing the record in the light most favorable to the Appellants, there is direct evidence that Lowe's managers at the Palestine store

expressed negative attitudes evidencing retaliatory motives toward workers' compensation claimants, including these four claimants in particular. This evidence is detailed on pages 35-37, and includes testimony that the store's general manager and other managers expressing doubts about the injuries, and wanting to make them "Lowe's next customers." There is also evidence that all four were subjected to intimidation, threats and insults when they tried to protest that they were being worked against the light duty restrictions provided under Lowe's workers' compensation policies. (RR3:52-53; 4:13-14, 123, 191; 5:76) They were all threatened with losing their jobs if they protested being worked against the light duty policy. (RR3:50, 52-53; 4:13-14; 5:72) Setting aside Lowe's erroneous argument that the Court is to "weigh" evidence in reviewing a directed verdict, there is sufficient evidence to support the second *Cont'l Coffee* factor as well.

3. *Lowe's failed to follow numerous policies.* The third factor is likewise supported by more than a scintilla of evidence. There was evidence of several substantial failures to abide by established policies. Several of these are detailed above, including the failure to honor and follow the light duty restrictions provided under Lowe's workers' compensation policy by making the employees work outside their restrictions and threatening and intimidating them if they protested.

In addition, the evidence showed Lowe's failed to document when and why the employees were switched from workers' compensation to "personal leave" in the Lowe's computer system. For each employee, there should have been a form or

12

computer screen capture in their employee file showing that a request for personal leave had been made for each employee. Yet there were no forms for any of these four employees. (RR6:26-28, 30, 31) Each employee's personnel file should have also had a leave of absence checklist if this had been the start of a personal leave – yet there were none. (RR6:22) In fact, Lowe's corporate representative could not explain how Lowe's could even calculate the start of the personal leave periods for these employees since there was no documentation to support when they even started these supposed "personal leaves." (RR6:25) None of these employees were ever even aware they were categorized by Lowe's as taking personal leave until each received her termination letter. (RR4:28, 132, 203; 5:79)

There were yet other failures to follow company policy. The evidence shows Lowe's had a policy requiring warning letters to each employee that went out prior to exceeding the personal leave maximum had these employees actually been properly subjected to the personal leave policy. (RR6:20-21) Yet, none of the employees were aware they had been put on personal leave, or near exceeding the maximum number of days allowed, until after each was terminated. (RR4:28, 132, 203; 5:79)

The Court need not even consider the other two factors, as a showing that any three of them were supported by sufficient evidence to create a fact issue would require reversal of the directed verdict. *Armendariz v. Redcats USA, L.P.*, 390 S.W.3d 463, 469 (Tex. App. – El Paso 2012, no pet.); *Aust v. Conroe Indep. Sch. Dist.*, 153 S.W.3d 222, 229 (Tex. App. – Beaumont 2004, no pet.). However, even if the Court

13

were unconvinced that there was sufficient evidence of the first three factors, the record supports the remaining two *Cont'l Coffee* factors.

4. *The employees were treated differently from non-claimants.* The most direct and clear evidence of this is the fact that Lowe's policies required a decision to start personal leave be documented in Lowe's system upon request by the employee. None of the four employees requested that they be placed on personal leave. None of them knew that they were on personal leave and subject to a maximum number of leave days until after they were terminated. Lowe's policies also required notice to be sent to employees that were ordinarily on personal leave warning them that their leave was about to expire *before* they were terminated. Thus, had these been ordinary Lowe's employees taking personal leave, they would have requested it, been aware that they were on it, been aware of how long they had before they would be terminated, and would have received a warning letter prior to termination to confirm they were about to exceed the maximum leave.

The evidence here shows that these employees, all of whom should have been on workers' compensation leave after being deliberately worked against their physical restrictions in violation of Lowe's workers' compensation policy, did not request to be put on personal leave, no personal leave was properly documented in Lowe's system, and no warning was sent prior to termination. The record supports that none of these four women knew they were even subject to the personal leave maximum until

14

after each one's employment had already been terminated. (RR4:28, 132, 203; 5:79) There is more than a scintilla of evidence to support the fourth *Cont'l Coffee* factor.

*5. Stated reason is false.* Finally, there is also evidence of the fifth *Cont'l Coffee* factor because there is some evidence that Lowe's stated reason for the termination was false. The evidence shows Lowe's managers mis-categorized workers' compensation claimants as though they were taking "personal leave" to trigger the maximum leave provision of Lowe's leave policy – which otherwise would not have applied if Lowe's treated them as workers' compensation claimants they actually were.

As explained in Appellants' principal brief, if an employee's termination is claimed to be the result of an attendance policy, the employee raises a fact issue by providing some evidence of retaliatory intent. *Kings Aire, Inc. v. Melendez*, 416 S.W.3d 898 (Tex. App. – El Paso 2013, pet. filed); *Echostar Satellite, L.L.C. v. Aguilar*, 394 S.W.3d 276, 288 (Tex. App. – El Paso 2012, pet. denied); *see also Baptist Memorial Healthcare Sys. v. Casanova*, 2 S.W.3d 306, 309 (Tex. App.--San Antonio 1999, pet. denied); *Omoro v. Harcourt Brace & Co.*, No. 05-96-01454-CV, 1999 Tex. App. LEXIS 133, 1999 WL 10388, at *3 (Tex. App. – Dallas 1999, no pet.)(mem. op.)(employee may raise fact issue in face of attendance policy compliance by producing competent "evidence of a retaliatory motive").

As detailed above, the absence control policy was not even followed as to these four employees. For each employee, there should have been a form or computer screen capture in their employee file showing that a request for personal leave had

15

been made for each employee, and each personnel file should have also had a leave of absence checklist if this had been the start of a personal leave – yet there were none.

There should also have been warning letters to each employee that went out prior to exceeding the personal leave maximum had these employees actually been properly subjected to the personal leave policy. (RR6:20-21) There were none – indeed none of the four workers knew they had been categorized as being on personal leave subject to a maximum number of days until they each received their letter of termination. (RR4:28, 132, 203; 5:79)

Thus, there was evidence that the leave of absence policy was not uniformly followed. Indeed, the leave of absence policy was not followed by Lowe's with regard to these four employees. In fact, it does not even appear that any part of it was followed other than issuing termination letters to set up the pretext that these employees were fired for taking too much personal leave instead of being fired for making workers' compensation claims.

This evidence not only further supports the third *Cont'l Coffee* factor – failure to abide by set policies – but it also supports the fifth factor – Lowe's stated reason for the termination of these employees was false. If the neutral application of the absence control policy were the actual reason for the termination of Brewer, Meador, Adams and Curry, then the evidence would show Lowe's actually followed that policy. A reasonable jury could infer Lowe's reliance on its absence control policy, which would not apply to workers' compensation leave because it had no maximum leave period,

16

was a false pretext. Gonzalez's statements during managers' meetings that workers' compensation claims impacted the store budget and his bonuses and intended to make workers' compensation claimants into "Lowe's next customers" also shows Lowe's proffered non-discriminatory reason is a false pretext covering a retaliatory motive.

Finally, Tinsley's testimony that Gonzalez would move injured employees around in order to make them "quit" (RR7:24) is *direct* evidence that they were not actually terminated for taking too much personal leave, but were terminated because they were workers' compensation claimants whose claims and light duty status were impacting managers' bonuses.

In sum, a reasonable jury, had it been allowed to deliberate on this record, could have concluded that Lowe's managers in Palestine deliberately moved these four employees around, working them against their light duty restrictions in violation of Lowe's workers' compensation policy in order to get them to quit or force them to take time off from work that Lowe's would then categorize as "personal" leave subject to the leave of absence policy. There was both direct and circumstantial evidence that a retaliatory motive was a cause of these employees' terminations. In fact, as explained in the next section, there is quite a bit more evidence in this case than was found sufficient in either *Kings Aire* or *Echostar.*

**III.   THE LEAVE OF ABSENCE POLICY WAS NOT FOLLOWED; THIS CASE IS FAR MORE SIMILAR TO *ECHOSTAR* THAN THE CASES RELIED ON BY LOWE'S.**

The facts of this case make the retaliatory motive even more clear than in either, *Kings Aire* or *Echostar*, where both courts found sufficient evidence that an ostensibly neutral absence control policy was rebutted by evidence of a retaliatory motive and failure to follow the policy. Lowe's attempts to distinguish *Kings Aire* rely on its mistaken arguments about the record evidence in this case, and minor factual distinctions that make no meaningful difference. For instance, Lowe's argues the employer in *Kings Aire* knew about the claims but the managers responsible for the termination here did not. However, as explained above, this is based on Lowe's misleading argument that the managers at the Palestine store were not responsible for categorizing these employees as being on personal leave without their knowledge in order to trigger the personal leave policy and terminate them.

In *Kings Aire* the employer re-categorized the employee from the unlimited workers' compensation leave to a limited FMLA leave, then terminated the employee ostensibly for violating the amount of leave that would be available for FMLA. *Id.*, 416 S.W.3d at 910. As here, the amount of leave would have been unlimited had the employee been treated as taking workers' compensation-related leave. Finding that record presented a genuine issue of material fact as to whether the employee requested to be put on FMLA leave or whether the employer did it without the employee's consent, the court concluded:

18

> There is a fact question as to whether Melendez elected to switch from the indefinite worker's compensation leave to the time-limited FMLA leave himself — in which case Kings Aire properly allowed a cause-neutral absence control "clock" to expire before termination — or whether Kings Aire switched him to time-limited FMLA leave without his consent for the specific purpose of retaliating from behind a cause-neutral veil.

*Id.* The court affirmed the jury's verdict in favor of the employee, finding it was supported by sufficient evidence. *Id.*

Contrary to Lowe's arguments distinguishing *Kings Aire*, the facts here are far more clear than those in *Kings Aire*. Here, in addition to evidence that the employer switched the employee to a limited category of leave without the employees' knowledge, the record also supports:

- Lowe's deliberately worked these employees beyond their light duty restrictions to force them into taking leaves of absence;

- Lowe's store manager, Gonzalez, stated that he did this in order to make injured employees "quit," that he resented the effect these injured employees had on the store's budget, and that he sought to make them "Lowe's next customer";

- Other managers engaged in a pattern of bullying, intimidation and threats when the employees attempted to protect themselves by protesting they were on physical work restrictions;

- After they had been worked against restrictions long enough that they could no longer perform their work, without the employees' request or knowledge, Lowe's categorized all four employees as taking "personal leave" instead of what should have been unlimited workers' compensation leave, thereby triggering a time clock they were unaware was ticking until after they received notice that their employment was terminated;

- Lowe's followed almost none of the policy requirements for a termination that would have been accomplished through a "neutral" leave policy, including failure to document the start of the leave, failure to create a leave checklist, failure to notify the employees they were even on limited personal leave, and failure to issue warning letters prior to termination apprising these employees that they were about to exceed the maximum leave policy.

If anything, this case much more readily and obviously raises evidence of a valid retaliation claim than the facts of *Kings Aire*.

The facts of *Echostar*, which Lowe's does not even attempt to distinguish (or even mention in its brief) are even more similar to this case. There, the employee, Aguilar, was a satellite installer who suffered a work-related injury and made a workers' compensation claim. He returned to work on "light duty" answering phones, but within a few days his managers and others began "mocking his injury." *Id.*, 394 S.W.3d at 283. The evidence included statements by Aguilar's manager that his workplace injury "created a negative financial impact" on the company, was "costing money" and "disrupting" the installation department's "quota system." *Id.* Aguilar was then threatened by his manager that if he could not do installation work, he would be fired. *Id.* He was offered the choice of going on FMLA instead, which he accepted because his manager would not allow him to continue on light duty. *Id.* Three weeks after the conclusion of his FMLA leave period, Aguilar was terminated. *Id.* at 284.

Affirming the jury's verdict for Aguilar, the court found there was sufficient evidence that a retaliatory motive was a contributing cause of Aguilar's termination –

20

applying the same legal sufficiency standards applicable to a directed verdict. *Id.* at 287

(*citing City of Keller*). Relying on the *Cont'l Coffee* factors as the standard for

circumstantial evidence in such cases, the court concluded:

> In the instant case, several of the *Cont'l Coffee Prods. Co.* and *Wyler* factors are present and establish the initial causal link. For example, there is no question that Appellants had knowledge of the compensation claim and that the people making the decision to terminate were aware of the claim, a factor favoring Aguilar. Aguilar testified that other employees showed a negative attitude towards his condition, while Appellants provided contravening testimony. Appellants deviated from their policies in a number of respects, specifically in that Appellants' policy is to provide transitional or light duty for injured employees, however after only a few days on light duty, Aguilar was told to either return to his regular duties or be fired. Appellants further deviated from their policies by failing to notify Aguilar in writing, advising him of the expiration of his leave prior to terminating his employment.

*Id.* at 288. Although the court found no evidence of disparate treatment of non-

injured employees (the fourth factor), the court still concluded the *Cont'l Coffee* factors

were supported by enough evidence in the factors described above to support the

jury's finding that a retaliatory motive was the cause of Aguilar's termination. *Id.*

The court also found that the employer's failure to follow the FMLA leave

policy created a fact issue as to whether the enforcement of the leave policy was a

"neutral" explanation for the termination. Specifically, the court found that since the

employer had not followed the FMLA termination policy as to Aguilar himself, which

would have required his termination after 3 days of absence, there was sufficient

evidence that the policy was not uniformly enforced. *Id.* at 286-87.

21

All of these facts – and more – are present in this case. The store-level management in Palestine where these employees were mis-designated as taking personal leave without their knowledge were well aware that all four employees had made workers' compensation claims and were on light duty restrictions under Lowe's workers' compensation policy. There is abundant evidence that Lowe's store management had a negative attitude toward the workers and their injuries, including evidence of a deliberate plan by Gonzalez to move injured employees around to different jobs to try to make them quit, threats of termination, intimidation and insults and similar conduct far more severe than that detailed in *Echostar*. As in *Echostar*, Lowe's had a policy of providing light duty work to workers' compensation claimants, but refused to honor the light duty, threatening the employees with termination unless they worked against their light duty restrictions.

Finally, just like the employer in *Echostar*, there is evidence Lowe's did not uniformly apply or follow its personal leave policy. Thus, there was evidence that the personal leave policy was not uniformly applied – and specifically not uniformly applied as to these four employees, who were put on limited personal leaves of absence without requesting it, without being notified of it, without it being documented in their personnel records and without advance written warning that they would be terminated for exceeding the maximum leave allowed under the policy.

Even beyond the facts of *Echostar*, this case shows that workers' compensation claimants were treated differently than regular employees by moving them around to

22

make them quit and by placing them on personal leaves without their request or knowledge. Moreover, in *Echostar* at least the employee, Aguilar, was aware he had been placed on FMLA leave with a limited duration. Here, the evidence is that these employees were completely unaware they had been categorized as taking limited personal leave until *after* they were already terminated.

Tellingly, Lowe's brief does not even mention the *Echostar* case. The only meaningful distinction that could be drawn between this case and *Echostar* is that the evidence supporting the *Cont'l Coffee* factors and the deviations from the supposed uniform policy is even more extensive here than it was in *Echostar*. By contrast, the cases relied on by Lowe's are easily distinguishable. In none of those cases - *Texas Division-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312 (Tex. 1994), *Parker v. Valerus Compression Servs.*, LP, 365 S.W.3d 61 (Tex. App. – Houston [1st Dist. 2011, pet. denied) or *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386 (Tex. 2005) – did the evidence show that individuals were targeted because of their workers' compensation claims in order to be put on limited personal leaves without their knowledge as in this case and *Kings Aire*. In none of those cases did the evidence show that the supposedly neutral policy was not even followed. Rather, as in *Echostar* and *Kings Aire*, this case involves evidence raising a genuine issue of fact establishing that the policy was not uniformly applied, was not followed and was a false pretext to conceal a retaliatory motive. Indeed, this case involves direct evidence of that retaliatory motive in the form of statements by the store manager that he intended to move light duty

23

employees around the store in order to make them quit. As detailed extensively in the discussion of the fact in Appellants' principal brief (pp. 10-19), that is precisely was Lowe's management did to all four of these women.

Because there was more than a scintilla of evidence to support most of the *Cont'l Coffee* factors and evidence that the "personal leave" policy was not uniformly applied or followed, there is factually and legally sufficient evidence that a retaliatory motive was a contributing cause of the terminations of Brenda Brewer, Sabra Curry, Deanna Meador and Penny Adams.

## CONCLUSION

A reasonable jury could conclude both (1) that the making of workers' compensation claims in good faith was a cause of the terminations of Brewer, Meador, Adams and Curry, and (2) that Lowe's stated alternative reason was false. It was error to direct a verdict for Lowe's. The judgment should be reversed and this case should be remanded to the trial court for trial to a jury.

Respectfully submitted,

GRAVELY & PEARSON, LLP
425 Soledad, Suite 600
San Antonio, Texas 78205
Telephone: (210) 472-1111
Facsimile: (210)   472-1110

By:_____
**Matthew R. Pearson**

24

State Bar No. 00788173

And

THE MCBRIDE LAW FIRM, of counsel
  to GRAVELY & PEARSON, LLP
425 Soledad, Suite 620
San Antonio, Texas 78205
Telephone: (210) 472-1111
Facsimile: (210) 881-6752

By:_____

**Brendan K. McBride**
State Bar No. 24008900

**ATTORNEYS FOR APPELLANTS, BRENDA BREWER, DEANNA MEADOR, PENNY ADAMS, and SABRA CURRY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded on this 9th day of July, 2015 via electronic service through Texas.gov on Appellee's counsel of record:

Holly Williamson
Jamilah Mensah
Hunton & Williams, LLP

_____
**Brendan K. McBride**

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief is in compliance with the rules governing the length of briefs prepared by electronic means. The brief was prepared using Microsoft Word 2010. According to the software used to prepare this brief, the total word count, including footnotes, but not including those sections excluded by rule, is 5,341.

_____
**Brendan K. McBride**